**Lorenzo WHEELER, Plaintiff–Appellant,**

**v.**

**Officer SIMS, Captain Staley and S. Jordan, Defendants–Appellees.**

No. 90–1714.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1991.

Decided Jan. 8, 1992.

Jerold S. Solovy, Bradford P. Lyerla, Patricia A. Bronte (argued), Jenner & Block, Chicago, Ill., and Michael J. Tague, Flynn, Palmer, Tague & Lietz, Champaign, Ill., for plaintiff-appellant.

Tanya Solov (argued), Office of the Atty. Gen., Civ. Appeals Div., Chicago, Ill., for defendants-appellees.

Before COFFEY and MANION, Circuit Judges, and WILL, Senior District Judge.*

COFFEY, Circuit Judge.

On June 7, 1984, Lorenzo Wheeler, a Pontiac Corrections Center inmate, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. The district court construed the complaint as alleging: 1) that the defendants Staley and Jordan violated Wheeler's due process rights in refusing to consider the written statement he presented at the Adjustment Committee hearing; and 2) that the defendants Sims and Dean violated his Eighth Amendment right to be free of cruel and unusual punishment when they allegedly beat him, resulting in his allegedly being permanently paralyzed from the waist down. Wheeler appeals the trial court's dismissal of his due process count for failure to state a claim upon which relief can be granted and the entry of judgment (in accordance with the jury verdict) rejecting Wheeler's claim that Sims and Dean violated his Eighth Amendment rights. We affirm.

## I. FACTS

On April 16, 1984, correctional officers conveyed Wheeler to the Illinois Research Hospital in Chicago, Illinois for medical evaluation and treatment of injuries of an unspecified nature allegedly incurred while confined in the Pontiac Corrections Center. While in the hospital's waiting room, Wheeler and the correctional officers became embroiled in an argument over whether Wheeler could smoke and drink a cup of coffee in the waiting room area. At that time, Wheeler allegedly jumped from his chair and left the waiting area. When the officer ordered Wheeler to return to his chair, Wheeler refused and instead demanded that they depart from the hospital. The officers complied and returned Wheeler to Pontiac without his receiving medical attention.

Upon returning to the Pontiac Corrections Center, Wheeler entered the office of Assistant Warden Odie Washington without authorization to complain about his alleged mis-treatment at the hospital. Correctional Officer Sims followed Wheeler into the office, and Correctional Officer Dean, observing Wheeler's unauthorized presence in Washington's office, also entered the office. Sims and Dean stated that when the assistant warden informed Wheeler that he would not discuss the matter with him at that time, they took charge of Wheeler, who was handcuffed and shackled with leg irons, by the elbows and directed him out of the office. Wheeler alleges that during the process of removing him from Washington's office, Sims and Dean beat him severely, permanently paralyzing his lower extremities. He asserts that he has been unable to stand or walk since that day, April 16, 1984. Wheeler alleges that the purported beating was witnessed by inmate Jesse Merrette, who testified on Wheeler's behalf at trial.

The correction officers who were with Wheeler at the hospital filed an incident report regarding Wheeler's unauthorized actions in the hospital waiting room area and served the plaintiff-appellant with a copy of the report, which was the basis for the disciplinary hearing. The report notified Wheeler of his right to present a defense to the Adjustment Committee, stating:

"Please be advised that you have the right to appear before the Adjustment Committee and contest this rule violation charge by presenting a *written or oral statement or explanation* of your actions."

Wheeler prepared a written statement explaining his version of the events in the Chicago hospital and offered to present it to the Adjustment Committee at his hearing on April 21, 1984. But despite repeated requests from the committee to give an oral statement, Wheeler refused to comply. Nonetheless, the Adjustment Committee, consisting of defendants Staley and Jordan, refused to accept Wheeler's written state-

* The Honorable Hubert L. Will, Senior Judge for the Northern District of Illinois, is sitting by designation.

ment, explaining that he failed to submit it prior to the hearing in accordance with the state administrative regulations. The record fails to reveal any requirement that the written statement be submitted before the hearing.

The trial judge dismissed the due process claim January 29, 1990, holding that while Wheeler had a due process right to address the committee to present his defense, he did not possess a liberty interest in presenting a *written* rather than an oral statement. The court reasoned that the administrative regulation granting a right to present a *written or oral* statement fails to contain "explicitly mandatory language" mandating that a prisoner be permitted to make the choice of whether to present a written or oral statement prior to the imposition of disciplinary action. He concluded that the Due Process Clause merely entitles an inmate to the opportunity to present a defense, an opportunity the Adjustment Committee provided Wheeler when they asked for his oral statement.

The Eighth Amendment excessive force claim was tried before a jury February 12–14, 1990. At trial, the court admitted the defendant's Exhibit 11, which contained a number of reports concerning the defendant's activities during the time period in question from the plaintiff's master file documenting Wheeler's physical activity, including the dates he was observed moving his legs as well as the specific days when he was observed arising from his wheelchair and walking. Wheeler objected to the admission of Exhibit 11 on the ground that the documents contained hearsay statements made in preparation of litigation. The trial judge overruled the objection, admitting the exhibit under the business record exception to Federal Rule of Evidence 803(6).

## II. ISSUES

Wheeler presents two issues for review: 1) Whether the Adjustment Committee's refusal to consider his written statement at the disciplinary hearing violated the plaintiff's due process rights; and 2) Whether the district court abused its discretion in admitting Exhibit 11 in evidence.

## III. DUE PROCESS

■ The district court stated that "[r]eading [Ill.Admin.Reg.] 804(II)(H)(3) with 804(II)(H)(7), an inmate has an unmistakable right to appear before the committee, address the committee, and contest the charges." Order at 5 (Jan. 29, 1990). We are of the opinion that since the district court found that inmates are entitled to procedural safeguards under Ill.Rev.Stat. ch. 38, § 1003–8–7 (1978) and Ill.Admin.Reg. 804(II) (1981), the court found that the statute and administrative regulation created a liberty interest, for there can be no right to due process without a constitutionally protected interest at stake. Thus, it is surprising that Wheeler argues both in his opening brief and his reply brief that he has "a well-defined liberty interest at stake in the disciplinary proceedings against him." After the district judge found that Wheeler possessed a protected liberty interest, the only due process question at issue is whether the Due Process Clause itself [1] entitles an inmate to present a *written* statement rather than an oral statement setting forth his version of the facts at a disciplinary hearing.[2]

■ The appellant in his brief wrote as follows allegedly relying on *Wolff v. McDonnell*, 418 U.S. 539, 564–66, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974) and *Hewitt v. Helms*, 459 U.S. 460, 476, 103

---

1. On appeal, Wheeler does not contend that the Illinois *regulation* providing a right to present a written statement creates a liberty interest, but that the Due Process Clause does.

2. Wheeler argues that since Ill.Admin.Reg. 804(II)(H)(3) provides for the right to present a written statement explaining his position, "[t]he Adjustment Committee violated its own rules and Wheeler's due process rights when it re-

fused to consider the written statement." Since Wheeler does not base his alleged due process right to present a written statement on the Illinois regulations, it is immaterial whether the "Adjustment Committee violated its own rules." "Violations of state law do not automatically offend against the Constitution too." *Wallace v. Robinson*, 940 F.2d 243, 248 (7th Cir.1991).

S.Ct. 864, 874, 74 L.Ed.2d 675 (1983): "Due process requires that an inmate accused of disciplinary violations be given the ... right to present his own version of events *in written form.*" (Emphasis added). The plaintiff-appellant has misinterpreted *Wolff* and *Hewitt,* for neither of these cases held that the Due Process Clause mandates that a prisoner be allowed to present a written statement of "his own version of events" when he has been provided the opportunity to appear in person and testify orally, but has refused to do so. In *Hewitt* the Supreme Court stated that:

"In determining what is 'due process' in the prison context, we are reminded that 'one cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison.' *Wolff v. McDonnell,* 418 U.S. at 560, 94 S.Ct. at 2976. 'Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). These considerations convince us that petitioners were obligated to engage only in an informal, nonadversary review of the information supporting respondent's administrative confinement, including whatever statement respondent wished to submit, within a reasonable time after confining him to administrative segregation."

*Hewitt,* 459 U.S. at 472, 103 S.Ct. at 872. The language stating that prison officials were required to consider "whatever *statement* [the prisoner] wished to submit" refers to the content of the statement rather than its manner of presentation, and thus falls far short of directing that the authorities must consider the statement in whatever *form* the prisoner wished to submit it. The Court merely observed that the prisoner must be given an opportunity to present his statement of the facts, but did not mandate that the statement be in either oral or written form. The Court stated:

"An inmate must merely receive ... an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. *Ordinarily* a written statement by the inmate will accomplish this purpose, although *prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective.* So long as this occurs, and the decision maker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied."

*Id.* 459 U.S. at 476, 103 S.Ct. at 874 (emphasis added). Thus, under *Hewitt* the prerogative of determining whether the statement shall be received in oral or written form rests with prison authorities (providing the inmate has the capability of presenting either of them). Wheeler's theory that *Wolff* mandates that his due process right entitles him to present a written statement is a blatant misrepresentation of the case. Indeed, the appellant has failed to call our attention to any language in *Wolff* that supports his position. We refuse to extend the parameters of due process law, as set forth by the Supreme Court, to the detriment of prison administrators' discretion. *See Hewitt,* 459 U.S. at 476, 103 S.Ct. at 874. Furthermore, the Supreme Court's assessment of written statements in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), demonstrates that Wheeler's argument is without merit, indeed, nearly sanctionable:

"The decision in *Goldberg* [*v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)] ... was based on the Court's conclusion that written submissions *were an inadequate substitute for oral presentation because they did not provide an effective means for the recipient to communicate his case to the decision maker.* Written submissions were viewed as an unrealistic option, for most [welfare] recipients lacked the 'educational attainment necessary to write effectively' and could not afford professional assistance. In addition, such sub-

missions would not provide the 'flexibility of oral presentations' or 'permit the recipient to mold his argument to the issues the decision maker appears to regard as important.' "

*Id.,* 424 U.S. at 345, 96 S.Ct. at 907–08 (emphasis added). It is eminently clear from the language in this decision that the Supreme Court views written statements as less protection under the Due Process Clause than the opportunity to give oral testimony.[3] We agree with the Supreme Court's reasoning, for the vast majority of prisoners are not well educated and thus are better able to express themselves orally than in writing. Wheeler received the procedure to which he was entitled when the Adjustment Committee gave him the opportunity, which he rejected, to present oral evidence, and then reviewed the charges and available evidence. *See Hewitt,* 459 U.S. at 476, 103 S.Ct. at 874.

## IV. HEARSAY EVIDENCE

Defense Exhibit 11 contained some seventeen documents from Wheeler's prison master file documenting his ability to not only move his legs but even the physical dexterity and coordination required to allow him to walk. The plaintiff objected to the admission of this exhibit on the ground that it contained hearsay documents prepared for the purpose of litigation. Relying upon *Stone v. Morris,* 546 F.2d 730, 738 (7th Cir.1976), the district court received Exhibit 11 in evidence as a record of a regularly conducted business activity under Federal Rule of Evidence 803(6).[4] On appeal the appellant argues that the trial judge committed reversible error in receiving the exhibit in evidence because it fails to qualify as a business record under the hearsay rule, since the documents were prepared for purposes of litigation, and the admission of the exhibit prejudiced him through undermining his credibility before the jury—Wheeler asserts that Exhibit 11 was the only evidence the defendants presented to counter his testimony.

Wheeler has attempted to support his argument dealing with the parameters of reversible error with cases of other circuits but has very cleverly avoided even mentioning cases of this (Seventh) Circuit addressing the standard of review of evidentiary issues, for our cases make clear the difficulty Wheeler faces in asking us to reverse an evidentiary ruling:

> "We note that the appellant[ ] carr[ies] a heavy burden in challenging a trial court's evidentiary rulings on appeal be-

---

**3.** In another baseless argument, the appellant contends that Wheeler's statement was a "document" within the meaning of the Supreme Court's statement in *Wolff* that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979. Wheeler attempts to support this assertion through arguing that *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), defines " 'documentary evidence' expansively as including 'letters, affidavits, and other material that would not be admissible in an adversary criminal trial.' " This is a bald misinterpretation of *Morrissey,* for the language Wheeler quotes refers to the flexible nature of the process involved in informal parole revocation hearings. Since *Morrissey* held that parole revocation procedures require the "opportunity to be heard in person and to present witnesses and documentary evidence," *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604, "documentary evidence" certainly did not refer to a written statement of a witness who was appearing to testify orally.

**4.** Rule 803 states:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

cause 'a reviewing court gives special deference to the evidentiary rulings of the trial court.' Thus, we will reverse such rulings only upon a showing that the trial court committed an abuse of discretion."

*United States v. Briscoe,* 896 F.2d 1476, 1489–90 (7th Cir.1990) (citation omitted). "Under the 'abuse of discretion' standard of review, the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place...." *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 563 (7th Cir.1984). Rather, the abuse of discretion standard is met only when the trial judge's "decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision, or where the supposed facts found are clearly erroneous." *Id.* at 563–64 (citation omitted). Even if the admission of Exhibit 11 was an abuse of discretion, we will not reverse the trial court if the error is harmless. *See Cook v. Navistar Int'l Transp. Corp.,* 940 F.2d 207, 212 (7th Cir.1991).

"No error in either the admission or the exclusion of evidence ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Fed.R.Civ.P. 61. Thus, in order for Wheeler to establish reversible error, he must demonstrate that the record fails to support the trial court's judgment that Exhibit 11 was admissible as a business record and that the reception of the exhibit in evidence worked a substantial detriment and injustice upon his rights. In other words, the appellant must demonstrate that no reasonable person could believe that the doc-

uments in Exhibit 11 were business records and that, without their admission, there is a substantial likelihood that the jury's verdict would have been different.

■■■ The documents contained in Exhibit 11 were admissible as business records if 1) the acts recorded therein were reported by a person with knowledge, 2) it was the regular practice of the prison as a regularly conducted business activity[5] to record such acts, 3) the acts were recorded at or near the time of their occurrence, and 4) the documents are properly authenticated "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed. R.Evid. 803(6).

■ Initially, Wheeler argues that the documents contained in Exhibit 11 are not admissible under the business records exception to the hearsay rule because "the method or circumstances of preparation indicate lack of trustworthiness." Rule 803(6).[6] The appellant relies upon *Bracey v. Herringa,* 466 F.2d 702 (7th Cir.1972) for the proposition that hearsay statements of prison employees such as those contained in Exhibit 11 "are inherently unreliable because their makers have a strong incentive to exculpate themselves or their co-workers." In *Bracey,* the documents we held inadmissible were "prison records which included the self-serving statements of the defendants themselves as well as statements of other prison guards who were subject to possible Civil Rights Act liability." *Id.* at 705. In contrast, none of the entries on the documents in Exhibit 11 were made by the defendants in this case. Thus, they fail to evince the inherent unreliability of the records in *Bracey.*

Wheeler further argues that Exhibit 11 lacks trustworthiness because it was prepared in anticipation of litigation. This assertion is based on an assumption, unsupported in the record, that prison authorities expected Wheeler to initiate a lawsuit. The appellant apparently infers that Document

---

5. "A prison is clearly a 'business' within the meaning of the term" in Rule 803(6). *Stone v. Morris,* 546 F.2d at 738.

6. This is the import of Wheeler's argument, even though he fails to articulate it.

5, which was a report addressed to the prison Medical Director, was prepared in anticipation of litigation, since it is entitled "Routine cell watch on resident Loren[z]o Wheeler." Document 6, another memorandum addressed to the Medical Director describing Wheeler's ability to walk stated that its subject was "General Observations/Request of Dr. Hatala," the Medical Director. Since Wheeler, an inmate in a maximum security prison, consistently asserted that his alleged paralysis required special treatment and accommodations, it is not at all surprising that the Medical Director, in the proper exercise of his duties, would request that the guards make a special effort to observe Wheeler's movements in view of the fact that the Medical Director was of the opinion that Wheeler may have been a malingerer and faking the injury and paralysis. Further, the Medical Director is responsible for the medical needs of all inmates confined in the penitentiary. Thus, the fact that he requested special observations of Wheeler fails to support Wheeler's assumption that the memoranda were prepared in anticipation of litigation. Document 10 is a memorandum from the Medical Director to a correctional officer commending him for the "truly fine job" he did in documenting Wheeler's movements of his legs and feet in Document 9. He stated:

"As you know, we have been highly suspicious that Mr. Wheeler's contention that he is paralyzed is bogus, but we have been having a difficult time trying to document movement in his lower extremities. Your thoughtful and excellent documentation will help support our suspicions, particularly as the inmate has stated that his paralysis was caused by a correctional officer during an altercation."

We agree with the trial judge's ruling that Exhibit 11 was admissible, but as noted above, the issue is not whether we would have ruled that this memo was prepared in anticipation of litigation, but whether there was any evidence in the record upon which the trial judge could rationally have based his decision to receive or include the exhibit. Since the Medical Director is responsible for the prisoners' medical needs, and thus had a legitimate interest in determining whether Wheeler was in reality paralyzed (as he was unable to find an objective medical cause of paralysis), a reasonable person could well believe that this memo demonstrates the fulfillment of his medical responsibilities rather than a document prepared with the ulterior motive of injecting hearsay evidence into a trial. Thus, the appellant has failed to demonstrate that Documents 5 and 10 were prepared under circumstances that "indicate lack of trustworthiness" under Rule 803(6).

■ Second, the appellant argues that Exhibit 11 does not fit within the parameters of Rule 803(6) because it was not prepared in the regular course of business. Wheeler cleverly asserts that "[p]rison employees do not customarily detail the muscular movements of inmates within their cells," and that many of the documents in Exhibit 11 were prepared solely for the purpose of reciting such movements. As we stated above, when a prisoner alleges a physical paralysis that renders him physically immobile and requires special treatment by correctional officers in a maximum security institution like Pontiac Correctional Center, and when the treating medical officer has a suspicion[7] that the alleged condition is phony, prison authorities have a valid interest and duty to determine whether, in fact, the allegation is true. Furthermore, prison authorities have an additional legitimate reason for attempting to discern whether an alleged paralyzed prisoner is faking, for he might very well fake the disability for an inordinate period of time in hopes of effecting an escape as a result of officers believing him to be immobile and leaving him unguarded at an opportune time. Thus, from our review of the record, as we stated earlier, we agree with the district court that reports documenting movements that contradict the inmate's alleged handicap were prepared in the ordinary course of the Pontiac Prison

7. Despite numerous disciplinary citations for covering the front of his cell with a blanket, Wheeler refused to take it down. Thus, the medical officer's suspicions were exacerbated.

authorities operating a correctional (business) facility.

■ Third, Wheeler argues that some of the memoranda in Exhibit 11 were inadmissible under Rule 803(6) because they were "prepared long after the alleged events described therein." The specific argument is that since Document 1 was prepared nine days after the event, Document 2 was prepared three days after the event, Document 3 was prepared five days after the occurrence, Document 5 reported some incidents without stating when they occurred and Document 6 was prepared eleven days after the event, the memoranda were not prepared "at or near the time" as required under Rule 803(6). As the appellant has failed to support his argument with any legal reasoning or case law interpreting "at or near the time," we deem this argument to be waived. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). Moreover, because no decision has been presented to us and we have not uncovered any case law in support of the theory that an eleven-day interval is excessive, we believe this period of time is within the proper and logical interpretation of "at or near the time" under Rule 803(6).

Wheeler's fourth argument is that Exhibit 11 was inadmissible because the defendants failed to present witnesses to lay a foundation establishing that the documents therein were business records. In making this argument in his opening brief, the appellant failed to mention that the defendant offered to authenticate the documents if necessary, but the court stated that authentication would be superfluous:

"[DEFENSE ATTORNEY]: [I]f [the plaintiff's attorney] wants to object to the admissibility [of Exhibit 11], we will certainly bring somebody on and go through the elements of the business record.

THE COURT: ... [Y]ou want him to waive authentication that those exhibits are what they purport to be.

[DEFENSE ATTORNEY]: That's correct.

THE COURT: That they're records of a regularly conducted activity.

[DEFENSE ATTORNEY]: That's correct.

THE COURT: What do you say to that, Mr. Tague?

MR. TAGUE: I am trying to look at all of the exhibits again. The document we have and I have had this entire master file now they had supplemented these that were not in the pretrial order. It may well be just for convenience sake but I haven't had an opportunity to go through these with a fine tooth comb and I would just state that.

[DEFENSE ATTORNEY]: Judge, in response they were in the final pretrial order and they are joint exhibit documents in the master file.

THE COURT: If the master file is agreed it would be an exhibit and it's listed as a joint exhibit. I am not going to go through the necessary steps of authentication. That's just so much wasted effort.

MR. TAGUE: I agree. But then again I don't think when there is a document in one form that's agreed to as a joint exhibit now there is all sorts of things. I don't know in the order or context now I am handed these during the course of the trial and then I am asked to waive authentication on these.

As I go through these I might find something I have never seen before. I didn't bring that burden upon myself with all this stuff handed to me on the day of trial. There is no reason why these sub-parts couldn't be done in connection with the pretrial order.

THE COURT: Or that you couldn't have asked for them. The pretrial order was entered back in February 1st I guess is when it was filed. Well, I have made my ruling. I don't have anything before me at this time, but I am not going to go through the unnecessary steps of authenticating documents which were listed as joint exhibits."

The plaintiff's attorney failed to object to the trial court's ruling that it was unnecessary to authenticate the exhibit, and on appeal, Wheeler has failed to argue that the district court erred in refusing to require the defendants to authenticate the documents in Exhibit 11. Thus, the appellant's argument fails to constitute a request for us to overturn the district court's ruling that the exhibit was admissible without authentication. Rather, Wheeler argued for the first time in his reply brief that the documents in Exhibit 11 were not listed in the pretrial order. "[O]ur cases ... consistently declare that argument withheld until the reply brief ordinarily will not be considered." *Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir.1990). Thus, since Wheeler has failed to persuade us that there are exceptional circumstances requiring us to consider his belated assertion, we deem this argument to be waived. Moreover, the pretrial order clearly states that Wheeler's master file was a joint exhibit, and Wheeler has failed to argue that the documents included in Exhibit 11 were not part of his master file.

■ Finally, Wheeler argues that the admission of Exhibit 11 cannot be considered harmless error because it "improperly influenced the jury in deciding the central issue of Wheeler's credibility." As our discussion above has revealed, the appellant has failed to demonstrate that the admission of Exhibit 11 was improper. But even if the district judge committed error in receiving the exhibit in evidence, in light of the very convincing evidence presented on behalf of the defendants, we would hold that it was harmless error. If we held Documents 1–10 of Exhibit 11 to be inadmissible hearsay, as Wheeler asserts, Documents 11–17, which were clearly admissible as records of a regularly conducted business activity (operating a prison) pursuant to Rule 803(6), were more than sufficient to undermine Wheeler's credibility. Document 11 is an Inmate Disciplinary Report describing Wheeler jumping out of his wheelchair with the left foot rest of the chair in his hand to attack a prison guard when the guard attempted to place Wheel-

er in a cell he did not wish to enter. Documents 12 and 13 are an Incident Report and an Adjustment Committee Report, respectively, describing the same event. Documents 14, 15 and 16 are an Inmate Disciplinary Report, an Incident Report and an Adjustment Committee Investigation Report describing an occasion when Wheeler stood up from his wheelchair and "tried to punch" another inmate. Because these reports prepared during the relevant time frame are the types of official business records prison authorities keep in the usual course of running a maximum security institution and rely upon in determining when and what type of disciplinary measures are indicated, if any, they certainly constitute records of regularly conducted activity in the business of operating a federal correctional facility. *See Stone v. Morris*, 546 F.2d at 738 (the fact that memoranda have been prepared by prison staff members and retained in official prison files is evidence that they were prepared in the regular course of prison business activity). Thus, there was sufficient evidence in Exhibit 11 to undermine Wheeler's credibility even without the challenged documents.

Additionally, there was more than ample testimony presented to overcome Wheeler's bald and unsupported assertion that he was totally paralyzed. The Medical Director testified from the annals of primary medical observation and knowledge that if a person is paralyzed, the leg "muscles atrophy and wither and become very small. There is no muscle tone and the legs will simply drag and get in the way basically if someone would attempt to stand." In regard to Wheeler's legs, he testified that "for the most part he has muscle mass present and muscle tone that appears to be normal." The record is void of evidence that there is any medical condition or physical infirmity that would prevent Wheeler from walking, and another physician who treated Wheeler during the relevant time frame testified that he saw Wheeler walk a foot or two while holding onto a table. In conjunction with Wheeler's admission that he received numerous disciplinary reports for keeping a blanket over the front of his

cell for "privacy" purposes, a jury could legitimately have concluded that Wheeler could in fact walk, but was attempting to hide his physical mobility from prison authorities. Thus, based upon the record before us, even if we were to agree that the district judge had committed error in admitting Exhibit 11, the error would have been harmless.

## V. CONCLUSION

Unfortunately for Wheeler, the management of our prisons and our penal system have not degenerated to the point that prisoners rather than prison administrators possess the discretion to determine how disciplinary proceedings shall be conducted. We are convinced that the appellant received adequate due process prior to the imposition of disciplinary segregation, since he received the opportunity, but refused, to give oral testimony before the Adjustment Committee, and we are of the opinion that there is no due process right to present a prisoner's version of events in writing when he has been given the opportunity to give his version of the facts orally. Thus, the district court's action was proper in dismissing Wheeler's due process claim. Furthermore, Wheeler has failed to establish that the district court abused its discretion in receiving Exhibit 11 in evidence, or even if the admission of Exhibit 11 were erroneous, that Wheeler was prejudiced thereby. Thus, the judgment of the district court is

AFFIRMED.