70 F.3d 1274
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Curtis HENDERSON, Plaintiff-Appellant,
v.
Rodney J. AHITOW, Richard McVicar, and Richard Hammonds
Defendants-Appellees.
 No. 94-2050.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 14, 1995.*
Decided Nov. 30, 1995.
 
 Before POSNER, Chief Judge, and FAIRCHILD and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Curtis Henderson is incarcerated in the Illinois Department of Corrections prison system. He appeals the dismissal of his civil rights suit on the defendants' motion for summary judgment. Because the pleadings and affidavits submitted present no genuine issues of material fact and the defendants are entitled to judgment as a matter of law, we affirm.
 
 
 2
 On April 3, 1993, while incarcerated at the Illinois River Correctional Facility ("IRCC"), Henderson got into a fracas with a correctional officer. The guard filled out a disciplinary report, of which Henderson received a copy a day or two later. On April 6, Henderson went before the prison's disciplinary committee (the "Adjustment Committee") for a hearing regarding the altercation. Henderson told the committee that he had prepared a written statement; after handing the written statement to the committee, one of the committee members asked Henderson to step outside the hearing room while they considered the statement. A guard then escorted Henderson back to his cell. With no further testimony from Henderson, the committee found him guilty of instigating the fracas. They sentenced him to 90 days segregation, 90 days loss of good time credit, a reduction in grade status, and transferred him to the Pontiac Correctional Center ("PCC").
 
 
 3
 Henderson brought this suit under 42 U.S.C. Sec. 1983 against the warden at IRCC, Rodney Ahitow, and the two members of the Adjustment Committee, Richard McVicar and Richard Hammonds, claiming that they violated a variety of due process requirements at his disciplinary hearing. Henderson also alleged that the defendants deliberately withheld a copy of the Adjustment Committee's decision from him to prevent him from appealing their decision.
 
 
 4
 The defendants submitted affidavits stating that they had mailed a copy of the Adjustment Committee's decision to Henderson at PCC, and argued that they could not be held liable under Sec. 1983 if the report was lost in the mail. The defendants then moved for summary judgment on all the plaintiff's claims. The district court concluded that there were no material facts in dispute and that the defendants were entitled to judgment as a matter of law. This appeal followed.
 
 
 5
 On appeal, Henderson has dropped his claim that the defendants deliberately withheld from him a copy of the Adjustment Committee's report. Thus, we are left only with Henderson's allegations of procedural deficiencies in the hearing and his challenge to the evidentiary basis for the committee's decision.
 
 ANALYSIS
 
 6
 The appellees did not file a brief in this court. Consequently, we must analyze the issues presented without the benefit of the appellees' arguments.
 
 
 7
 The Due Process Clause of the Fourteenth Amendment imposes four requirements on prison disciplinary committees: (1) prison officials must give the prisoner advance written notice of the charges against him, (2) the disciplinary hearing must give the prisoner the opportunity to present witnesses and evidence in his defense, (3) the fact finders must give the prisoner a written statement of the evidence upon which they relied and the reasons for their decision, and (4) the decision maker must be sufficiently impartial. Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir.1992) (citing Superintendent v. Hill, 472 U.S. 445, 454 (1985); Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). So long as the disciplinary committee follows these procedures, our sole inquiry is whether "some facts" support the disciplinary committee's decision. Hanrahan v. Lane, 747 F.2d 1137, 1138 (7th Cir.1983).
 
 
 8
 Henderson's first claim of procedural inadequacy is that "no records were read to [him]" at his disciplinary hearing. Construing this argument generously, Henderson is claiming that he did not receive adequate advance notice of the charges against him. But as Henderson admits in his brief, he received a copy of the disciplinary report--which clearly stated the charges against him--one to two days after his fracas with the guard, and hence one to two days before his disciplinary hearing. Wolff commands no more: it requires only that a prisoner be afforded written notice of the charges against him at least 24 hours before his disciplinary hearing. Wolff, 418 U.S. at 564. Accordingly, this claim has no merit.
 
 
 9
 Henderson next claims that the committee violated his rights by accepting only his written statement and denying him the opportunity to make an oral statement. The defendants, in contrast, claim that Henderson was given--but declined--the opportunity to address the committee orally. Both sides submitted affidavits to support their respective assertions. In either case, both sides agree that Henderson had the opportunity to present his views--at the very least in writing--to the disciplinary committee. The district court held that this opportunity satisfied the requirements of Wolff. We agree.
 
 
 10
 Although a prisoner before a disciplinary committee is entitled to present his version of events, a written statement is usually constitutionally adequate. Hewitt v. Helms, 459 U.S. 460, 476 (1983) (receded from on other grounds by Sandin v. Conner, 115 S.Ct. 2293 (1995)). Admittedly, in Wheeler v. Sims, 951 F.2d 796, 801 (7th Cir.1992), we noted that
 
 
 11
 [i]t is eminently clear [from Mathews v. Eldridge, 424 U.S. 319 (1976) ] that the Supreme Court views written statements as less protection under the Due Process Clause than the opportunity to give oral testimony. We agree with the Supreme Court's reasoning, for the vast majority of prisoners are not well educated and thus are better able to express themselves orally than in writing.
 
 
 12
 In Wheeler, though, we held only that a prisoner did not make out a claim for a due process violation when a prison disciplinary committee allowed him to make an oral statement but not to submit a written statement. Wheeler, 951 F.2d at 806. We did not hold the converse--that written statements are always constitutionally inadequate. Although written statements may provide less due process protection than oral statements, in prison disciplinary hearings written statements nonetheless provide adequate protection, at least where--as here--the prisoner is literate in English and able to coherently present his arguments in writing. See also Moody v. Miller, 864 F.2d 1178, 1180-81 (5th Cir.1989) (opportunity to present written statement but not oral statement to prison disciplinary panel is constitutionally adequate). Henderson does not claim that he was unable to fully and articulately present his version of the fracas in writing. Accordingly, the committee did not violate the mandates of Wolff when it based its decision on Henderson's written statement only.
 
 
 13
 Henderson's third objection to the process accorded him is that he was not allowed to call witnesses in his favor. Illinois prison regulations provide that a prisoner may call witnesses to testify at his disciplinary hearing, so long as the prisoner makes the request in writing prior to the hearing and states the substance of the witnesses' testimony. Ill.Admin.Code tit. 20 Sec. 504.80(f)(2). The record in this case clearly shows that Henderson made no such request--nor does Henderson claim he did. Thus, Henderson is objecting only to being prevented from calling witnesses while he was physically present before the Adjustment Committee. This claim is identical to one we rejected in Hamilton v. O'Leary, 976 F.2d 341, 346-47 (7th Cir.1992). There, we held that a disciplinary committee could reject untimely requests for witnesses. Similarly, the committee's refusal in this case to accept Henderson's untimely witness request did not violate Henderson's constitutional rights.
 
 
 14
 Henderson's fourth claim of procedural inadequacy is that the Adjustment Committee ignored exculpatory evidence; in particular, Henderson asserts that the committee did not even consider his written statement. The record of the proceeding, however, clearly contains Henderson's version of the fracas as he described in his written statement. The record states that "[Henderson] claims that [Correctional Officer] Jump closed the [cell] door on his bare foot.... [Henderson] claims all he did was put his arm up to keep the door from shutting on him." This is precisely the version of events Henderson described in his written statement. Because the evidence submitted by the defendants clearly belies Henderson's unsupported assertion that the committee ignored his statement, the district court properly rejected this claim.
 
 
 15
 The appellant next objects to the speed with which the Adjustment Committee resolved his case--he describes the hearing as "shockingly brief" and alleges that the Committee did not deliberate before reaching its decision. Henderson appears to be alleging that the committee's decision was entirely arbitrary, thereby violating the mandates of Wolff. Wolff, 418 U.S. at 558. As we stated in Hanrahan, however, federal courts review prison disciplinary hearings only to ensure that they comply with the procedural requirements of Wolff and that there is "some evidence" to support the committee's decision. Hanrahan, 747 F.2d at 1140. So long as a prison disciplinary hearing follows those requirements--as in this case--federal courts may not rule that the committee's decision was arbitrary. Thus, the brevity of the hearing does not constitute a due process violation.
 
 
 16
 Henderson's final procedural claim is that the summary of the Adjustment Committee's report does not adequately describe the basis for its decision. As we said in Saenz v. Young, 811 F.2d 1172, 1174 (7th Cir.1987), however, a prison disciplinary committee is required to give a summary of the reasons for its decisions only to allow reviewing courts to determine whether the evidence was adequate to support its findings. Here, the Adjustment Committee based its decision on "staff observations"--the statement of the correctional officer involved in the fracas--and the presence of witnesses to the fracas whom Henderson declined to call. (The committee apparently inferred from this last factor that the witnesses would have contradicted Henderson's version of the story.) In prison disciplinary cases such as this one, where the committee's decision was a simple matter of determining the relative credibility of two witnesses, we have held that a statement by the committee that it chose to believe one witness over another is constitutionally sufficient. See, e.g., Pardo v. Hosier, 946 F.2d 1278, 1285 (7th Cir.1991); Culbert v. Young, 834 F.2d 624, 631 (7th Cir.1987); Saenz, 811 F.2d at 1173-74. Here, the committee credited the guard's version of events and not Henderson's written version; there is nothing inadequate about the Adjustment Committee's summary of its decision in this case.
 
 
 17
 Henderson raises one final issue in his appeal: he claims that the defendants had insufficient evidence to support a finding of guilt. A prison disciplinary committee's finding satisfies due process so long as it is supported by some--indeed any--evidence in the record. Under Hill, so long as there is any evidence of guilt, a reviewing court may not consider the relative weight of the evidence. Viens v. Daniels, 871 F.2d 1328, 1334-35 (7th Cir.1989) (citing Hill, 472 U.S. at 455-57). As we have noted, the evidence in this case of Henderson's guilt includes the statement of the correctional officer involved in the fracas and Henderson's refusal to timely call witnesses to corroborate his version. Thus, there is--for constitutional purposes--sufficient evidence of Henderson's guilt.
 
 
 18
 Accordingly, the decision of the district court is AFFIRMED.
 
 
 
 *
 The appellees in this case filed a Notice of Intent Not to File a Brief. After preliminary examination of the appellant's brief, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement has been filed. Accordingly, the appeal is submitted on the briefs and the record