**Jeff T. STONE, Plaintiff-Appellant,**

v.

**Ernest E. MORRIS, Assistant Warden, Illinois State Penitentiary, Joliet Branch Segregation Unit, et al., Defendants-Appellees.**

**No. 75–1669.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1976.

Decided Dec. 10, 1976.

Rehearing and Rehearing En Banc Denied Jan. 11, 1977.

---

732

Arlene C. Erlebacher, Chicago, Ill., for plaintiff-appellant.

William J. Scott, Atty. Gen., Anne Taylor, James B. Zagel, Jayne A. Carr, Asst. Attys. Gen., Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and STECKLER, District Judge.[*]

STECKLER, District Judge.

This is an appeal from a jury verdict and judgment adverse to plaintiff-appellant's civil rights claim under 42 U.S.C. § 1983.

The issues presented are whether the district court erred in refusing to permit the plaintiff-appellant, Jeff T. Stone, to attend the trial of his civil rights claim, and whether the court committed reversible error in refusing to admit into evidence a memorandum authored by a prison correctional counselor.

The action was brought in the United States District Court for the Northern District of Illinois. At that time plaintiff Stone was an inmate in the Joliet Branch of the Illinois State Penitentiary serving a one-hundred to two-hundred year sentence for murder. Prior to the trial he was transferred from Joliet in the Northern District of Illinois to the Menard Correctional Center in the Eastern District of Illinois.

Plaintiff's principal contention is that the district court deprived him of a fair trial and of his constitutional right of access to the courts and counsel by excluding him from the jury trial of his prison-connected civil rights claim.

The defendants-appellees argue that the plaintiff waived any objection to his exclusion from the trial because no objection was made until the motion for a new trial was filed ten days after the jury returned its verdict. Defendants contend that the plaintiff was not prejudiced by his exclusion because his case was fully presented through his deposition and the introduction of exhibits. It is also the defendants' position that a prisoner-plaintiff has no constitutional right to be present at his civil rights trial, and that the trial judge properly excluded the prison memorandum from evidence as hearsay.

The issues before the trial court involved principally questions of fact. We therefore have carefully examined the record, and particularly the trial proceedings, to determine whether the plaintiff's claim was fairly submitted to the jury.

Stone commenced his action by filing a lengthy and detailed *pro se* complaint naming as defendants Ernest E. Morris, the Assistant Superintendent and later Warden at Joliet,[1] and three other members of the staff at Joliet: John Gentry, a Lieutenant, Virdeen Willis, a Captain, and H. B. McElroy, an Officer.

The complaint alleged that on October 16, 1972, defendants Gentry, Willis, and McElroy, and two other prison guards, Officers

[*] Honorable William E. Steckler, Chief District Judge for the Southern District of Indiana, is sitting by designation.

1. The complaint against Warden Morris was subsequently dismissed with prejudice. The parties stipulated that Morris was not a participant in the incident in question.

Moland and Hinch,[2] subjected the plaintiff to a brutal beating with various weapons for which he was hospitalized and from which he continued to suffer. According to Stone's version the assault began shortly after the noon meal when Officer Moland accused him of throwing garbage onto the gallery in front of his cell. Moland's accusation and Stone's denial, it was alleged, turned into a name-calling exchange with racial overtones during which Moland threatened to beat Stone to death. Stone alleged that Moland then left cell 109 where Stone was confined but returned shortly with Officer Hinch; that Moland and Hinch threw a container of hot coffee and a mop bucket of dirty water at him; and that Moland and Hinch were then joined by Gentry, Willis, and McElroy, all of whom proceeded to brutally attack him with fists, weapons, and mace. Stone alleged that he lost consciousness twice during the course of the beating and that the defendants stripped him of his clothes and maced his naked body.

Stone alleged that he was then dragged by the defendants to cell 702 where the beating continued. There, he alleged, the defendants attempted to strike him with a weapon described as a "baseball bat" and that the unsuccessful blow struck and broke a porcelain toilet bowl in cell 702. He alleged that the toilet bowl shattered and cut his arm, and that thereafter the defendants removed him from the cell to the prison hospital for treatment of his injuries.[3]

Stone also claimed that during the attack many of his personal belongings were destroyed and others were confiscated and distributed to other inmates. In detail he described his attempts to bring his grievances to the attention of prison officials and the Disciplinary Committee of the Illinois Department of Correction but that he received no adequate response from prison and state officials.

The defendants filed a motion to dismiss or for summary judgment accompanied by a memorandum of law and separate affidavits of Willis, Gentry, McElroy, and Morris. In their affidavits the defendants denied that any such incident as alleged by Stone occurred on October 16, 1972, and stated that on October 18, 1972, Stone had been transferred from cell 109 to cell 702 without any particular incident.[4]

The district court denied the motion to dismiss, ruled that the pro se complaint stated a good cause of action, and ordered the defendants to answer. The court then appointed counsel to represent the plaintiff. By leave of court plaintiff's court-appointed counsel filed an amended complaint, abbreviating the lengthy allegations of the pro se complaint, limiting the relief sought, and adding Officers Moland and Hinch as parties defendant. On March 28, 1974, the defendants filed their answer to the amended complaint in which they renewed their denials of the allegations of the complaint.

Pursuant to an order of the court issued on March 27, 1974, plaintiff's counsel on May 1, 1974, more than a year prior to the trial, filed a designation of the witnesses he intended to call at trial. Plaintiff's counsel stated in the designation that he intended to base his case entirely on the plaintiff's own testimony and that he would call no

2. Moland and Hinch were subsequently joined as parties defendant.

3. The record reflects that on October 20, 1972, Stone was transferred from the detention hospital at the Joliet Correctional Center to the detention hospital at the Stateville Correctional Center for further medical treatment, and that on October 27, 1972, he was transferred back to the Special Program Unit at Joliet.

4. According to the defendants, the reason for the cell transfer was that Stone had thrown urine and feces on prison officers outside his cell, number 109, "on a myriad of occasions."

They asserted the transfer was made to cell 702 because it was located on an empty gallery where there was less traffic.

Defendants claimed in their affidavits that shortly after the transfer, while alone in his cell the plaintiff smashed his toilet bowl and thereby cut himself. They asserted that the self-inflicted injury was the reason plaintiff was taken to the prison hospital. They denied destroying or confiscating any of Stone's personal property but stated that some items were destroyed by flooding caused by the broken toilet bowl in cell 702.

other witnesses at trial. On February 14, 1975, defendants' counsel took plaintiff's discovery deposition with plaintiff's counsel present. For the purpose of the deposition plaintiff was transported to the Stateville Correctional Center in Joliet from the Menard Correctional Center, to which he had been transferred from Joliet in late 1973.

On March 24, 1975, at a conference to fix a trial date the district court ruled *sua sponte* that the court would not secure plaintiff's attendance at the trial. The court stated that as far as the plaintiff was concerned the court would try the case by deposition. At the time the court made this announcement the following colloquy took place:

> The Court: Well it is not essential that he [the plaintiff] be present for the trial. I will not require him to be brought here for this trial. That is unnecessary. We have his deposition, and we will proceed to choose the jury and try the case. Since you already have his deposition, we can try it any time.
>
> Mr. McLain [Plaintiff's counsel]: Yes, your Honor.
>
> The Court: How long will it [the trial] take?
>
> Mr. McLain: About two days, your Honor.
>
> The Court: Well, he must be sentenced for a very serious crime.
>
> Mr. McLain: Yes, he is, your Honor.
>
> The Court: Murder?
>
> Mr. McLain: Yes.
>
> Mrs. Taylor [Defendants' counsel]: That is correct.
>
> The Court: I am not going to require him to be brought up here. He would like that, of course, but I am not going to do it. I will try this by deposition, as far as he is concerned. His deposition has now been taken, and I am ready to try it at any time.[5] When will you be ready?

The case was tried to a jury from May 27 through May 30, 1975. At the trial plaintiff's testimonial evidence consisted solely

of the reading of plaintiff's discovery deposition. There was introduced, however, as part of the plaintiff's case-in-chief, or for rebuttal or impeachment purposes, documentary evidence consisting of stipulations of counsel, photographs, forms, reports, and records of the Illinois State Penitentiary, and portions of defendant McElroy's affidavit, together with his answers to interrogatories. The defendants' evidence consisted of the in-court testimony of three of the defendants as well as the testimony of Warden Morris, Philip Costello, Supervisor of Patient Services at Joliet, and Marshall Sauder, an inmate at Joliet at the time the events in question allegedly took place. Sauder, also a convicted murderer, was on a work release program from Joliet at the time of the trial. During the trial witnesses for the defendants made repeated references to the plaintiff's lack of personal hygiene and propensity for violence. Because of the absence of Stone, the members of the jury had no opportunity to make their own observations of Stone as a person and to consider them along with the other evidence.

There was a sharp conflict between the plaintiff's allegations and the defendants' denials and their testimony as to the nature and extent of plaintiff's injuries leading to his hospitalization, the manner in which the toilet bowl was broken, the plaintiff's conduct immediately prior to the cell transfer, and the use of weapons and mace.

On May 30, 1975, the jury returned its verdict, finding in favor of each of the defendants and against the plaintiff.

The defendants claim that Stone's version of the events in question was fully submitted to the jury through the use of his deposition and the cross-examination of the defendants at trial. Our conclusion, however, is that since no pretrial discovery depositions were taken of the defendants by the plaintiff's counsel, and since the plaintiff was not permitted to attend the trial, plaintiff was denied the opportunity to examine and test the credibility of the defend-

---

**5.** The fact that the deposition was a discovery deposition taken by the defendants' counsel was either overlooked or given little significance.

ants' testimony given to the jury, and to that extent he was precluded from aiding and assisting his counsel in confronting their testimony.

## I.

The first question presented on review is whether the action of the district judge in summarily excluding Stone from his civil rights trial infringed upon his constitutional right of access to the courts and to counsel.

■ The plaintiff maintains that the constitutional rights of access to the courts and counsel necessarily encompass the right of a plaintiff-prisoner to attend the jury trial of his civil rights claim, to assist in the presentation of his case and in the rebuttal of his opponent's case, and to testify in his own behalf. Plaintiff argues that the established rights of access are illusory unless the right of attendance is read into them. We agree that the right of access to the courts encompasses the right of the inmate to have his case presented, but we do not agree that a plaintiff-inmate must be given the opportunity, in all instances, to appear personally and present his version of the facts. As long as the inmate and his counsel are afforded adequate opportunity to confer confidentially and to petition the courts about matters in controversy, the right of access is satisfied. *Moeck v. Zajackowski*, 541 F.2d 177 (7th Cir. 1976).

■ This circuit has long recognized that a prisoner lawfully committed has no constitutional right to be produced as a witness in his own civil rights action. *Edgerly v. Kennelly*, 215 F.2d 420 (7th Cir. 1954); *Moeck v. Zajackowski, supra.* Instead, it is within the discretion of the court to determine whether a prison inmate shall attend court proceedings held in connection with an action initiated by the inmate. *Price v. Johnston*, 334 U.S. 266, 68 S.Ct. 1049, 92

L.Ed. 1356 (1948).[6] The discretion vested in the court is not unfettered or unbridled, however.

The fact that there is no constitutional right to be present in a civil action does not sanction the summary exclusion of a plaintiff-prisoner from the trial of his prison-connected civil rights claim. Rather the trial court must weigh the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner. *Moeck v. Zajackowski, supra.*

In *Price v. Johnston, supra*, the Supreme Court speaking through Mr. Justice Murphy stated:

"[T]his discretion is to be exercised with the best interests of both the prisoner and the government in mind. If it is apparent that the request of the prisoner to argue personally reflects something more than a mere desire to be freed temporarily from the confines of the prison, that he is capable of conducting an intelligent and responsible argument and that his presence in the courtroom may be secured without undue inconvenience or danger, the court would be justified in issuing the writ. But if any of those factors were found to be negative, the court might well decline to order the prisoner to be produced." 334 U.S. 266, 284–85, 68 S.Ct. 1049, 1059, 92 L.Ed. 1356 (1948).

These same factors are to be considered by the trial court in exercising its discretion to determine whether a plaintiff-prisoner in a civil rights suit shall be permitted to attend the trial of his claim.

■ In making his determination the district judge should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particu-

6. In *Price* the Supreme Court considered the question of the power of a United States Court of Appeals to command that a prisoner be brought before it in order to present oral argument in a case involving his life or liberty. The Court held that the appeals court had the power to order the presence of a prisoner-petitioner. The power was found to be exercisable in the sound discretion of the court and was said to be rooted in the All Writs Act, now Title 28 U.S.C. § 1651. The aspects of the opinion dealing with the discretionary power of an appellate court are applicable to a federal district court as well.

lar inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition. *See Moeck v. Zajackowski, supra.*

■ The interests of the inmate in presenting his testimony in person rather than by deposition subsumes other factors or considerations such as whether the trial is to be to the court or to a jury, whether the prisoner has any other witnesses to call at trial or whether, as here, the prisoner is the only person who can render testimony consistent with the allegations of his complaint, and whether the defendants themselves plan to take the witness stand. From the record before us, particularly in view of the nature of the plaintiff's prison-connected civil rights claim, it does not appear that the trial court gave sufficient consideration to these factors in concluding that Stone would not be permitted to attend the trial.

■ Defendants point out that plaintiff's counsel did not make a formal objection to the district court's *sua sponte* ruling of March 24, 1975, which excluded the plaintiff from the trial of his claim. We do not believe that the failure of plaintiff's counsel to register a formal objection after the court made its ruling serves as a waiver of the issue. Inasmuch as counsel had filed a designation of witnesses naming only the plaintiff himself, we feel that the purpose of Rule 46 of the Federal Rules of Civil Procedure [7] was satisfied, although it would have been the better course for plaintiff's counsel to have registered a formal objection. The purpose of Rule 46 is to inform the trial judge of possible errors so that he

may have the opportunity to consider his rulings and to correct them if necessary. *Ries v. Lynskey,* 452 F.2d 172 (7th Cir. 1971). Normally that purpose can be adequately served only by the making of an objection on the record, but if the court and the other litigants know what action a party desires the court to take, the purpose of the rule is served. In such circumstances a formal objection is not required, and the failure of the court to take the desired action may be asserted as error on appeal. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2472 at 460 (1971). *Cf. Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Maryland,* 202 F.2d 794 (7th Cir. 1953); *Steinhauser v. Hertz Corp.,* 421 F.2d 1169 (2d Cir. 1970). We therefore hold that under the circumstances of this case the failure of counsel to enter a formal objection to the *sua sponte* ruling of the district court excluding the plaintiff from the trial does not amount to a waiver of the issue.

Defendants next contend that the trial court did not have jurisdiction to secure Stone's presence at the trial because he was incarcerated at the Menard Correctional Center which is not in the Northern District of Illinois. They argue that the decision of this court in *Edgerly v. Kennelly, supra,* operates to preclude the issuance of a writ of habeas corpus *ad testificandum* extraterritorially.

In *Edgerly, supra,* the plaintiff brought a civil action in the Northern District of Illinois based on alleged police brutality. Subsequent to the commencement of the action the plaintiff was convicted of serious criminal offenses and was confined in the Federal Penitentiary at Alcatraz Island, California. Plaintiff's counsel sought writs of habeas corpus *ad testificandum* for the purpose of taking the plaintiff's deposition in Chicago and for the production of the plain-

---

7. Rule 46 states:
 "Formal objections to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court

the action which he desires the court to take or his objection to the action of the court and the grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."

tiff at the trial of his claim in Chicago. This court held that the district court was without jurisdiction to direct issuance of the writs to an official who was not within the territorial jurisdiction of the court.

Subsequent to the decision in *Edgerly* the Supreme Court held that a writ of habeas corpus *ad prosequendum* is not subject to territorial limitations. *Carbo v. United States,* 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961). *Carbo,* however, left open the question of the extraterritorial reach of a writ of habeas corpus *ad testificandum.* Citing *Carbo* and Title 28 U.S.C. § 2241(c)(5), a district court held that in a proper case it had jurisdiction to issue a writ of habeas corpus *ad testificandum* extraterritorially to the warden of a federal prison in another jurisdiction. *United States v. McGaha,* 205 F.Supp. 949 (E.D. Tenn.1962). *McGaha* was cited with approval by the Supreme Court in *Barber v. Page,* 390 U.S. 719, 724, 88 S.Ct. 1818, 20 L.Ed.2d 255 (1968),[8] and Chief Judge Haynsworth of the Fourth Circuit has observed that *Barber,* through its citation of *McGaha,* "suggests that the remaining doubt about the [extraterritorial] reach of habeas corpus *ad testificandum* is insubstantial." *Word v. North Carolina,* 406 F.2d 352 n.5 (4th Cir. 1969) (en banc).

▇▇▇ The writ of habeas corpus *ad testificandum,* Title 28 U.S.C. § 2241(c)(5), is, on its face, comparable to and is as broad as the writ of habeas corpus *ad prosequendum,* Title 28 U.S.C. § 2241(c)(4). *Cf. Ex parte Bollman,* 8 U.S. (4 Cranch) 74, 2 L.Ed. 554 (1807). We therefore hold that a district court has the power, although to be exercised with discretion, to compel production of an incarcerated party or witness from anywhere in the country through the use of a writ of habeas corpus *ad testificandum.* To the extent that *Edgerly v. Kennelly, supra,* is inconsistent with this decision, it is overruled.[9]

Due to the setting in which the plaintiff's civil rights claim arose, and the way in which it was submitted to the jury as fact finders, we conclude that the plaintiff is entitled to a new trial in which his side of the controversy can be fairly presented. In so holding we are not saying that Stone must be allowed to personally appear at the trial. However, based on the facts of this case, we consider it most probable that the trial judge will deem it appropriate to have Stone brought to the trial, although the trial judge would not be foreclosed from coming to the opposite conclusion upon thorough consideration of the relevant factors.

## II.

The second issue presented by this appeal is whether the district court erred in refusing to admit into evidence at trial a memorandum written by J. William Gilbert, a correctional counselor at Joliet, to Dr. Cietko, a staff psychiatrist. The memorandum, written on Department of Correction stationery and dated October 18, 1972, purportedly was an account of the events which led to plaintiff's alleged injuries and corroborated plaintiff's claim that the defendants used mace on him during the cell transfer. In this respect the memorandum was contradictory to the sworn testimony of the defendants. The district judge excluded the memorandum from evidence on the ground that it was hearsay.

Plaintiff contends that the memorandum was admissible under the business records

---

8. *Barber* held that while there is a recognized exception to the Confrontation Clause of the Sixth Amendment where a witness is unavailable and has given *testimony at previous judicial* proceedings against the same criminal defendant which testimony was subject to cross-examination by that defendant, the witness is not "unavailable" for purposes of the exception unless prosecutorial authorities have made a good faith effort to obtain his presence at trial.

For the broader question presented by this appeal, *Barber* is also instructive in its preference for in-court, as opposed to deposition testimony.

9. This opinion has been circulated among all judges of this court in regular active service in view of the overruling of this circuit's decision in *Edgerly.* No judge favored a rehearing *en banc.*

exception to the hearsay rule. At the time of trial the business records exception was codified at 28 U.S.C. § 1732(a).[10] The exception has since become a part of the Federal Rules of Evidence. Fed.R.Evid. 803(6).[11] Plaintiff maintains that the memorandum comes within the scope of the business records exception inasmuch as it was made in the regular course of the prison counselor's duties and because a prison is a "business" for purposes of the business records exception.

The defendants argue that the memorandum was not prepared in the regular course of prison business and therefore does not come within the scope of the exception. They argue that elements of trustworthiness and reliability upon which exceptions to the hearsay rule are based are not present because "[t]he plaintiff has never demonstrated that counselors routinely prepare memoranda about incidents like the one at issue, that they and their sources of information have a duty to be accurate in the preparation of such memoranda, and that prison administrators rely on such memoranda." The parties had stipulated the authenticity of all prison records produced, including the memorandum.

 We conclude that upon laying a proper foundation for its introduction the prison record written by Mr. Gilbert is admissible into evidence under the business records exception to the hearsay rule. *United States v. Newman,* 468 F.2d 791 (5th Cir. 1972), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973).[12] A prison is clearly a "business" within the meaning of the term in the statute and the rule, and inasmuch as the memorandum was prepared by a member of the staff at Joliet and was lodged in the official prison files, we conclude that it was made in the regular course of prison business activity. The fact that the memorandum was retained as part of plaintiff's prison file indicates that it is the type of document routinely relied upon by prison officials.

 Defendants further argue that the memorandum lacks the trustworthiness necessary to bring it within the scope of the exception because the memorandum does not reveal the source of the information contained within it. That argument is more properly addressed to the weight to be accorded the memorandum by the trier of fact and not to its admissibility. The statute in force at the time of trial provided, "All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but

**10.** Section 1732(a) provided, in relevant part:

"In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter."

**11.** Rule 803(6) provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"(6) Records of regularly conducted activity.—A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

A comparison of the statute in force at the time of trial and the now operative rule shows that our conclusion as to admissibility would be the same regardless of whether the statute or the new rules of evidence were in force.

**12.** *Newman* held that a prison admission summary compiled by prison officials in the regular course of business was admissible under the business record exception to the hearsay rule.

such circumstances shall not affect its admissibility." 28 U.S.C. § 1732(a). Although this provision no longer is part of Section 1732 nor is it incorporated *in haec verba* into the Federal Rules of Evidence, the principle for which it stands remains intact. The Senate Judiciary Committee in its report on the Federal Rules of Evidence stated:

> "It is the understanding of the committee that the use of the phrase 'person with knowledge' is not intended to imply that the party seeking to introduce the memorandum, report, or data compilation must be able to produce, or even identify, the specific individual upon whose firsthand knowledge the memorandum, report, record, or data compilation was based." Report on the Federal Rules of Evidence, Committee on the Judiciary, Senate, 93d Cong., 2d Sess., No. 93–650 at 17 (October 18, 1974), *cited in* 4 J. Weinstein & M. Berger, Weinstein's Evidence 803–12 (1975).

The Committee also noted that:

> "A sufficient foundation for the introduction of such evidence will be laid if the party seeking to introduce the evidence is able to show that it was the regular practice of the activity to base such memorandums, reports, records, or data compilations upon a transmission from a person with knowledge." *Id.*

For the reasons stated the judgment of the district court is reversed and the case remanded for a new trial.

Reversed and remanded.