# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

STATE OF TENNESSEE,              )
DEPT. OF CHILDREN'S SERVICES,    )
                                 )
    Petitioner/Appellee,     ) Davidson Juvenile No. 09-39-03, 04
                                 )
VS.                              ) Appeal No. 01A01-9708-JV-00424
                                 )
WINIFRED LYNN MOSS,              )
                                 )
    Respondent/Appellant.    )

APPEAL FROM THE JUVENILE COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE ANDREW J. SHOOKHOFF, JUDGE

**FILED**

**March 20, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

**J. MICHAEL O'NEIL**
Nashville, Tennessee
Attorney for Appellant

**JOHN KNOX WALKUP**
**Attorney General & Reporter**
**DOUGLASS EARL DIMOND**
**Assistant Attorney General**
Nashville, Tennessee
Attorneys for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

    Defendant/Appellant, Winifred Moss ("Moss"), appeals the judgment of the trial court

terminating his parental rights and in failing to award custody of his children to a family member instead of foster parents. Moss contends that because the termination proceeding was performed without his presence, it was in violation of his due process rights. We disagree and affirm the judgment of the trial court.

Moss is the father of Winfred Lemar Moss born May 20, 1988, and Cameron Lynn Moss born December 4, 1990. Both children were born of Nicole Rhodelle Crawford ("mother") in Jackson County, Illinois. The children were taken into State custody on April 14, 1994. At the time, the children lived with their mother in an apartment. A representative of the Department of Human Services (now Children's Services) ("DCS") went to visit the children at mother's apartment. Upon arrival at the apartment, the representative found one child outside and one child playing with scissors. The representative further observed all the children eating raw ground beef and reported that, besides the raw ground beef, there was no food in the apartment, that clothes were strewn throughout the entirety thereof, that the house reeked of urine, and that the children were generally soiled and unkempt. All of this was taking place while the mother lay asleep in an upstairs bedroom. The mother has had a long history of drug addiction. As a result of the above findings, DCS believed the children to be at risk of abuse and neglect due to mother's drug abuse. In April of 1994, the children were removed from the mother but were returned later that month. In September of that same year, the children were once again removed from the mother's care and custody and placed in foster care. Over the next few years, mother tried to overcome her drug addiction but did so to no avail. Finally, the Juvenile Court terminated her parental rights on July 30, 1996.

For some time during this period, it appeared as though custody of the children would be awarded to Nona Moss Rice, Moss's sister who lived in Illinois. In a letter dated May 30, 1995, Ms. Rice informed the court that she was very much interested in obtaining custody and raising her two nephews. On June 6, 1995, the court ordered DCS to make a referral to Illinois that Ms. Rice might obtain custody of the children. The court, however, on August 12, 1995, found that mother had taken some positive strides toward the return

2

of her children and, therefore, that it was not in the best interest of the children to move out of state with the Rices at that time.

Mother regressed back to her old ways in late 1995. In a permanency planning order entered November 13, 1995, the court found that mother had failed three drug screening tests since the last court hearing in August. Mother was in agreement with the court that the children should go to live with the Rices in Illinois. The court further noted that the Rices did not want the children to come to their home until after Christmas of that year because of prior commitments.

On January 10, 1996, the court found no variation in mother's condition since November of the previous year. The court ordered DCS to obtain thorough reports from Illinois regarding the children's adjustment and progress.

On February 28, 1996, the court learned that the children had not gone to stay with the Rices as planned. Indeed, the court discovered that the Rices had decided not to take custody of the children.

Thereafter on June 5, 1996, DCS filed a petition to terminate the parental rights of Moss. The court initially terminated Moss's parental rights on July 30, 1996. The court found that Moss had been served by publication. However, in a letter dated October 10, 1996, and styled "Notice of Appeal," Moss contested the court's decision to terminate his parental rights. Moss contended that he had no notice of the earlier termination proceeding.

The court treated Moss's letter as a motion to set aside its previous order terminating his parental rights and granted that motion on October 25, 1996. The court held a rehearing on the termination of Moss's parental rights on December 18, 1996.

At the hearing, the court had before it all of the aforementioned facts. Also, Ms.

3

Rice testified. She stated that there had been a home study done in Illinois and that she had come to Tennessee in August of 1995, hoping to gain custody of the children. She testified that she did not obtain custody of the children at such time because the court found that mother had made some progress in her drug interdiction. She admitted that in January of 1996, she told DCS that "it was against [her] husband's wishes to place the children with [her] and God's will was for [her] to be submissive to [her] husband." At the time of trial, she admitted that she remained unable to obtain custody of the children, but that her sister would take care of them. Ms. Rice's sister never filed for custody of the children.

Additionally the children's foster parent testified. He stated that he and his wife had taken care of the children for approximately two years, and wanted to adopt them. He further testified that the children were excited about being adopted.

On December 3, 1996, Moss was deposed for the trial. He testified, in part, that he was currently incarcerated in Big Muddy River Correctional Center since December 7, 1994, on a number of charges for twenty years. He conceded that he was confined in a correctional facility under a sentence of ten or more years and that the children were under the age of eight years old when the sentence was entered. He last saw his children in January of 1994, nearly a year before his incarceration. He beseeched the court to grant custody of his children to Ms. Rice instead of terminating his parental rights because his family was "real close."

On January 4, 1997, the court terminated Moss's parental rights on several grounds, and particularly pursuant to Tenn. Code Ann. § 36-1-113(g)(6), in that Moss was confined in a correctional facility under a sentence of ten or more years, and the children were under eight years of age when Moss was sentenced. The custody of the children was turned over to DCS with the right to place the children for adoption. This appeal ensued. At the present time, the Robinsons, the foster parents, have completed the adoption paperwork and are waiting to sign said paperwork depending on the outcome of this appeal.

4

On appeal, Moss cites three issues to this court. However, we conclude that there are essentially two issues of import in this matter. They are as follows:

> 1. Whether Moss's right to due process was violated by the failure of the trial court to require his attendance at the termination of parental rights rehearing.
>
> 2. Whether the State failed to make reasonable efforts to place the minor children with relatives, particularly the paternal relatives of the children.

**Whether Moss's right to due process was violated by the failure of the trial court to require his attendance at the termination of parental rights rehearing.**

Tenn. Code Ann. § 36-1-113(g)(6) provides:

> (g) Termination of parental or guardianship rights may be based upon any of the following:
> > (6) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

In the case under submission, Moss concedes that the statutory grounds for termination of his parental rights do exist. He contends, however, that his due process rights have been violated by the failure of the trial court to require his presence at the termination rehearing. We disagree.

The right of a prisoner to be transported to a county courthouse for the hearing of a civil matter in which the prisoner is a party depends upon whether the prisoner is a plaintiff or defendant as discussed below. While a prisoner has a constitutional right to instigate and prosecute a civil action, this is a qualified and restricted right and is not absolute.

In *Whisnant v. Byrd*, 525 S.W.2d 152 (Tenn.1975), the plaintiff a prisoner confined in the Tennessee State Prison filed a pro se complaint seeking to recover a 5" X 7" photograph of a young lady and for $10,000 damages for intense worry, grief and mental pain, caused by the defendants' false dealings. The trial judge entered an order reciting that in view of the fact that the plaintiff was presently incarcerated in the state penitentiary,

5

that his case should be continued from term to term until plaintiff's release from prison. On appeal, the plaintiff contended that he had the right to have his case heard immediately and to be present for trial.

Justice Henry, writing for the Court stated:

"These constitutional provisions (Art. 1, Sec. 12 and Art. 1, Sec. 17, Const. of Tenn) constitute clear and unequivocal declarations of the public policy of this State to the effect that no forfeiture of property rights shall follow conviction for a crime, and that every man shall have a remedy by due course of law for an injury sustained by him."

The Court went on the provide:

> We therefore, hold that a prisoner has a constitutional right to institute and prosecute a civil action seeking redress for injury and damage to his person, or property, or for the vindication of any other legal right; however this is a qualified and restricted right. . .[w]e hold that absent unusual circumstances, prisoners who have filed their civil complaints, unrelated to the legality of their convictions and who have thus protected themselves against the running of any statute of limitations, will not be afforded the opportunity to appear in court to present their cases during their prison terms. . .[i]nstead such matters will be held in abeyance until the prisoner shall have been released from prison and is in a position to prepare and present his case. . .[w]e hold that in a proper case, and upon a proper showing of particularized needs, the trial judge in his discretion, may issue an appropriate directive requiring the attendance of the prisoner.

*Id.* at 153, 154.

Based on the foregoing, it is clear that a prisoner has no absolute right to be in attendance at a civil matter which he has initiated absent unusual circumstances. Such matters in the case of the prisoner plaintiff shall be held in abeyance until the prisoner is released. *Whisnant v. Byrd, supra., Smith v. Peebles*, 681 S.W.2d 567 (Tenn. App.1984).

In *Tolbert v. Tolbert*, No. 03A01-9406-CV-00230 (Tenn. Ct. App. Dec. 15, 1994), our colleagues from the eastern section noted the scarcity of Tennessee authority dealing with the rights of incarcerated defendants in civil suits to be personally present at their trials,

6

and sought guidance from other jurisdictions that have considered the question. The court cited with approval a case of the Arizona Supreme Court, *Strube v. Strube*, 764 P.2d 731 (Ariz. 1988). The *Strube* court held that:

> Prisoners have a right of access to the courts for legitimate purposes. At least with respect to a significant civil proceedings initiated against a prisoner by others, we hold that there is a presumption that the prisoner is entitled to be personally present at critical proceedings, such as the trial itself, when he has made a timely request to be present. Of course this is a rebuttable presumption and the ultimate decision is within the sound discretion of the trial court.

764 P.2d at 735. The *Strube* court also said that "the court's discretion should be exercised after balancing the interest of the prisoner against the interests of the other parties and the state, including the authorities having custody of the prisoner." *Id.* at 734.

While the *Tolbert* court did not go so far as to hold that Tennessee had adopted the rebuttable presumption discussed *supra*, it did place the question of whether to permit a prisoner in a civil case to be physically present at court within the trial court's sound discretion, and instructed the court that its discretion was to be exercised with the best interest of both the prisoner and the government in mind.

A prisoner's constitutional right of access to the courts does not encompass the right of the prisoner to appear personally in all instances and present his version of the facts. *Stone v. Morris*, 546 F.2d 730 (7th Cir.1976). As long as the inmate and his counsel are afforded adequate opportunity to confer confidentially and to petition the court about matters in controversy, the right of access is satisfied. *Id.* at 735. It is within the discretion of the court to determine whether an inmate shall attend court proceedings held in connection with an action initiated by the inmate. *Id.*

This Court is aware of no authority granting a prisoner defendant a right to be present in a civil matter. However, Tenn. Code Ann. § 41-21-304 is instructive in this regard. In pertinent part the statute provides as follows:

> (a) In no civil case can a convict be removed from the penitentiary to give personal attendance at court, but his testimony may be taken by deposition, as in other cases. . .

7

The court in *Whisnant v. Byrd*, *supra*, found the plaintiff's limited right to personally appear in civil matters to be based upon certain provisions of the Tennessee Constitution as cited above. However, there appears to be no basis, constitutional or otherwise, to extend this right to party defendants. Accordingly, we opine that the current status of the law is that party defendants have no absolute right to be in attendance at the hearing of a civil matter.

This, in our opinion, would not prohibit a defendant from vigorously defending against a civil matter. His unavailability for hearings and trials would not prohibit him from presenting matters to the court on his behalf. His testimony, as well as that of other prisoner witnesses, may be presented by deposition in accordance with Tenn. Code Ann. § 41-21-304. Moreover, a prisoner defendant may engage counsel to represent him. As long as the prisoner defendant is afforded ample opportunity to present his side of the controversy, there is no need for him to appear personally. *See Stone v. Morris*, *supra*. However, unlike the case of the prisoner plaintiff, it would be inappropriate to hold the matter in abeyance until the prisoner's release from custody. If adequate opportunity to present a meaningful defense has been afforded, we see nothing to prohibit the court from proceeding with the matter in the absence of a prisoner defendant. To this end, we note that this decision of whether or not to allow a defendant-prisoner personally to appear in a civil trial against him is within the sound discretion of the trial court.

A prisoner's unavailability for hearings and trials is due to his conviction. We are unaware of any authorities giving compelling reasons to remove prisoners from their self-caused restrictions and proceed with the case as though they could proceed at will. *See Seybold v. Milwaukee County Sheriff*, 276 F.Supp. 484 (E.D. Wis.1967).

In *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976), the court propounded a list of factors to be used by the trial court in exercising its discretion in determining whether a plaintiff-prisoner should be permitted to attend the trial of his claim. This court in *Tolbert*

8

*v. Tolbert, supra*, quoted the *Stone* court factors with approval:

> And [the judge] should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.

It is imperative to note that this list of factors deals primarily with plaintiff-prisoners. However, even when applying these factors to Moss, a defendant-prisoner, we find the decision of the trial court to be the correct one. The costs and inconvenience of transporting Moss from Illinois to Tennessee would be prohibitive. We fully realize that the termination of Moss's parental rights is a substantial matter. However, in light of his admission of the existence of the statutory grounds for the termination of his parental rights under Tenn. Code Ann. § 36-1-113, the possibility of his success on the merits is extremely diminished if not completely nonexistent thereby lessening the substantiality of this matter. Without a doubt, considering the need for an early determination and preventing the possible delay of trial, the best interest of the children is to get on with their lives and to begin on their road to emotional recovery.

Although a prisoner incarcerated in a state penitentiary who is a plaintiff in a civil matter may have a qualified and restricted right to be in attendance at a civil hearing, this limited right has not been extended to include party defendants. Whether to permit a prisoner in a civil case to be physically present at court should be left within the trial court's sound discretion with the instruction that the court's discretion should be exercised with the best interest of both the prisoner and the government in mind.

Accordingly, we conclude that Moss's due process rights have not been violated by the trial court's failure to require his presence at the termination rehearing.

**Whether the State failed to make reasonable efforts to place the minor children with relatives, particularly the paternal relatives of the children.**

When placing children, the order of preference is to return them to their parents or place them with relatives over permanent placement through adoption. Tenn. Code Ann. § 37-2-403 (1993); *State Department of Human Services v. Smith*, 785 S.W.2d 336, 338 (Tenn. 1990). The best interest of the child is the paramount consideration when determining the placement of a minor child. *Arnold v. Arnold*, 774 S.W.2d 613, 621 (Tenn. App.1989). The trial court must be guided by the best interest of the child. The best interest of the child is the polestar, the alpha and omega, in child placement determinations. *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. App.1983).

In the case under submission, DCS made every reasonable effort to place the children in the care of the Rices. After the trial court approved such placement with the Rices, the Rices, for whatever reasons, decided that it was not in their best interest to obtain custody of the children. At this point, Ms. Rice suggested that the children be placed with her sister. However, the identity and whereabouts of this sister were never forthcoming and this sister never filed for custody of the children. At the time of the trial, Robinson and his wife had cared for the children approximately two years and were willing to adopt the children. Indeed, the record reveals that the Robinsons were without a doubt eagerly awaiting to adopt Winfred and Cameron. In fact, the Robinsons had filed out the adoption paperwork completely and were ready and waiting to sign, pending the outcome of the present appeal. Undoubtedly, the trial court took all this into consideration when placing the children within the care of DCS.

We strongly emphasize that the courts of this state place a premium on continuity of placement because stability is important to a child's well-being. *Contreras v. Ward*, 831 S.W.2d 288, 290 (Tenn. Ct. App.1991); *Bah v. Bah*, 668 S.W.2d at 666. The real matter that the trial court was confronted with in placing the children with DCS was what was the best thing to do with these children--that they should remain in a home where they are nurtured, loved, appreciated and where the environment is such that is conducive not only to the physical welfare of the children, but also to their emotional and moral welfare, and where they can receive instructions from those who have control over them to inspire them

to activities so as to develop a personality prepared for a life of service, and to successfully compete in the society which the child faces when an adult.

The trial court found that "a change of caretakers and physical environment is likely to have a negative impact on the children's emotional, psychological and medical condition." Additionally, the trial court stated:

> The Court finds that the children were in a home together where they are likely to be adopted. The Court finds that the children are in an ideal situation because the foster parents clearly understand that these children have a grandmother, aunts and uncles, a mother, and a father, unlike an adoption that occurs at birth where everything is kind of hidden away in records until everybody gets older.

We conclude that DCS did make reasonable efforts to place the children with family members. In the end, the trial court was confronted with whether to allow the children to get on with the rest of their lives or to search for other family members who were not eagerly forthcoming. When the Rices were no longer a placement option, the trial court acted in what it concluded to be the best interest of the children. We conclude that the trial court's efforts were reasonable and their decision well reasoned. Accordingly we affirm the judgment of the trial court terminating Moss's parental rights and placing the children within the care of DCS.

In light of the foregoing, the judgment of the trial court is affirmed. Costs are taxed to Moss, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

11

LILLARD, J.

—————