02-10-366-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00366-CV

 

 


 
 
 In the Interest of D.L.S., 
 a Child
 
 
  
 
 
  
 
 
 
 
  
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

----------

 

FROM THE 235th
District Court OF Cooke COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

          Appellant
Father, an inmate serving a life sentence and appearing here pro se, appeals
the trial court’s order terminating his parental rights to his daughter D.L.S.
as part of a private termination and adoption suit.  In nine points, Father
raises due process and equal protection challenges and argues that the evidence
is insufficient to support the trial court’s order terminating his parental
rights to D.L.S.  Neither Mother nor D.L.S.’s adoptive Father filed a brief
with this court.  We will affirm.

II.  Factual and Procedural Background

          Father
married Mother in May 2000, and D.L.S. was born in October 2000.  Mother
separated from Father in January 2002 because of Father’s drinking and because
she felt that she and D.L.S. were in danger.  Mother and Father divorced in May
2003, and the final divorce decree granted Father supervised visitation only
because he had failed to complete an alcohol evaluation and a social study.  Father
last saw D.L.S. in 2002 or 2003 and made only one child support payment.

          In
August 2005, Father was imprisoned on murder charges.  He was convicted and
sentenced to life in prison.

          In
December 2007, Mother married Brian.  Thereafter, in 2009, Mother and Brian
filed a private suit to terminate Father’s parental rights to D.L.S. and to
allow Brian to adopt D.L.S.

          Father
answered and requested appointed counsel and a bench warrant.  The trial court
denied both requests.  The trial court, however, wrote a letter to Father
explaining,

Please be advised
that the law does not allow me to appoint you counsel in this type of case.  I
will, however, make the Court available to you to present your case.  The
Termination-Adoption Hearing has been set for a final hearing on September 27,
2010 at 4:00 P.M.  You may submit your testimony by sworn affidavits prior to
that time.  In the alternative, if allowed by the Prison authorities where you
are incarcerated and if you can arrange it, I will allow you to appear by
telephone conference during the hearing.  Notify the Court of your intentions. 
Regardless, a final hearing in this matter will be held September 27, 2010 at
4:00 P.M.

 

On
the day of the hearing, Father filed a motion for continuance, requesting a two-year
continuance “so that he may adequately represent himself”; a motion for
reconsideration of his request for a bench warrant; a motion to dismiss,
arguing that the required service of notice was not affected on him; and an
affidavit of Father’s testimony.  The trial court waited until 4:15 P.M. and
stated on the record that it had received no communication indicating that
Father had made arrangements for a telephone conference.  Father’s affidavit
was read into the record:

          [T]he
testimony Respondent [Father] would give at the hearing would be as follows: 
Respondent has never intentionally exposed the child to any influence that
would endanger the physical or emotional well-being of his child, number one.

 

          Number two,
Respondent loves and cares for his child and wishes to be involved in the care
of his child in the future and assist in the upbringing of his child.

 

The
trial court then heard testimony from the attorney ad litem for D.L.S., from Mother,
and from Brian.  The trial court thereafter found by clear and convincing
evidence that (1) Father had voluntarily left the child alone or in possession
of another without providing adequate support of the child and remained away
for a period of at least six months, (2) Father had knowingly engaged in
criminal conduct that resulted in his conviction of an offense and confinement
or imprisonment and inability to care for the child for not less than two years
from the date the petition was filed, and (3) termination of the parent-child
relationship between Father and D.L.S. was in D.L.S.’s best interest.  The
trial court heard additional testimony from Mother and Brian and then granted
the adoption and name change.

          Following
the entry of the judgment, Father filed a request for findings of fact and conclusions
of law, a notice of appeal, a motion to recuse the trial judge, and a motion
for new trial.  Father now raises nine points on appeal.  

III.  Lack
of Notice Argument is Moot

          In
his first point, Father argues that the required service under Texas Rule of
Civil Procedure 103 was not affected on him because he was not properly
notified of the suit by registered mail.  The record contains a copy of the
citation, and the return portion is blank.  However, Father acknowledges that
this may be a moot point because he filed an answer, which constituted an
appearance in this case.  See Tex. R. Civ. P. 121 (stating that “[a]n
answer shall constitute an appearance of the defendant so as to dispense with
the necessity for the issuance or service of citation upon him”).  We therefore
overrule Father’s first point as moot.[2] 

IV. 
Father’s Due
Process and Equal
Protection Rights

Were
Not Violated

 

          In
his third, fourth, fifth, sixth, seventh, and ninth points, Father argues that
his constitutional rights to due process and equal protection were violated.  In
his sixth and seventh points, Father also argues that the trial court abused
its discretion by denying his motion for bench warrant and his request for appointed
counsel.  We will address each of Father’s arguments below.

          A.      Denied
Request for Appointed Counsel 

          In
his seventh point, Father argues that the trial court abused its discretion by
denying his request for appointed counsel and that his due process and equal
protection rights were violated by the denial of his motion for appointed
counsel.  As set forth above, the trial court explained that Father was not
entitled to an appointed attorney.  Texas Family Code section 107.021(a)
provides only for discretionary appointments in private termination
suits.  See Tex. Fam. Code Ann. § 107.021(a) (West 2008).  Because appointed
counsel is not mandatory in a private termination suit, we hold that the trial
court did not abuse its discretion by not appointing counsel for Father.  See
In re J.C., 250 S.W.3d 486, 489 (Tex. App.—Fort Worth 2008, pet. denied)
(holding that because mother’s parental rights were terminated pursuant to a
private termination suit, she possessed no mandatory statutory right to
appointed counsel), cert. denied sub nom. Rhine v. Deaton, 130
S. Ct. 1281 (2010).  Accordingly, we also hold that Father’s due process and
equal protection rights were not violated.  We overrule Father’s seventh point.

          B.      Denied
Request for Bench Warrant

          In
his sixth point, Father argues that the trial court abused its discretion by
denying his motion for bench warrant without a quantifiable reason, that his
due process and equal protection rights were violated by the denial of the
bench warrant, and that his due process rights were violated by the trial
judge’s failure to set up the requested telephone conference.

Texas
courts consider several factors when deciding whether to grant a prisoner=s
request for a bench warrant, including (1) the expense and inconvenience of
transporting the inmate to court; (2) whether the inmate presents a security
risk to the court and public; (3) whether the inmate has substantial claims;
(4) whether the proceeding can reasonably be delayed until the inmate=s
release; (5) whether the inmate Acan
and will offer admissible, noncumulative testimony that cannot be effectively
presented by deposition, telephone, or some other means@;
(6) whether the inmate=s Apresence
is important in judging his demeanor and credibility@;
(7) whether the case will be tried before a jury or to the court; and (8) the
inmate=s
probability of success on the merits.  In re Z.L.T., 124 S.W.3d 163,
165–66 (Tex. 2003) (explaining that in recognizing these factors, Texas courts
have followed Stone v. Morris, 546 F.2d 730, 735B36
(7th Cir. 1976)).  AIn general, our rules place
the burden on litigants to identify with sufficient specificity the grounds for
a ruling they seek.  A litigant=s status as an inmate does
not alter that burden.@  Id. at 166
(citations omitted).  An inmate who claims a constitutional right to access
must explain Awhy his appearance in court [is]
necessary to preserve his constitutional right[.]@  Id. 
The trial court does not have a duty to independently inquire into Arelevant
facts not provided by the moving party.@  Id. 
Rather, the inmate who seeks a bench warrant Amust
justify the need for his presence.@  Id.

Here,
Father’s motion for bench warrant states that he “desires to present testimony
in his own behalf, especially concerning his desire to care, love and provide
for his natural child.”  Because Father’s motion does not recite facts
supporting the Stone factors, we hold that the trial court did not abuse
its discretion by denying his request.  See In re C.M.R., No.
02-07-00394-CV, 2008 WL 4963510, at *3 (Tex. App.—Fort Worth Nov. 20, 2008, no
pet.) (mem. op.); see also Ringer v. Kimball, 274 S.W.3d 865, 868 (Tex.
App.—Fort Worth 2008, no pet.) (holding that trial court did not abuse its
discretion in implicitly denying prisoner’s request for a bench warrant because
prisoner’s bench warrant motion contained no information by which trial court
could assess the necessity of his appearance at pretrial hearing).

Moreover,
when a trial court denies a request for a bench warrant and does not allow an
inmate to appear in person, it should afford the inmate the opportunity to
proceed by affidavit, deposition, telephone, or other means.  In re D.D.J.,
136 S.W.3d 305, 313–14 (Tex. App.—Fort Worth 2004, no pet.).  The record
reveals that the trial court offered Father the opportunity to participate via telephone
but that Father did not notify the trial court of his intention to participate
in the trial by that means.  The trial court also allowed Father to submit an
affidavit, and Father participated in the trial via his affidavit, which the trial
court read on the record.  Because Father participated in the trial by
affidavit, we hold that Father’s due process and equal protection rights were
not violated by the denial of his motion for bench warrant and that his due
process rights were not violated by the trial judge’s alleged failure to set up
the requested telephone conference, which was Father’s responsibility.  We
overrule Father’s sixth issue.

C.      Social Study
Evaluator’s Failure to Personally Interview Father

or to Provide Father
With a Copy of the Social Study

 

          In
his third point, Father argues that his due process and equal protection rights
were violated by the social study evaluator’s failure to interview each party
to the suit, specifically Father.  See Tex. Fam. Code Ann. §
107.0514(a)(1) (West 2008) (requiring social study to include personal
interview of each party to the suit).  Father also argues that the trial court
“oversaw this failure and allowed it to happen.”  In his fourth point, Father
argues that his due process and equal protection rights were violated by the
social study evaluator’s failure to provide Father with a copy of the social
study.  See id. § 107.055(b) (West 2008) (requiring service of
social study on attorneys for parties).  Father states that he did not become
aware of the social study until after he filed his notice of appeal and argues
that the trial court “oversaw this failure and allowed it to happen.”

          A
social study may be ordered in adoption proceedings or proceedings involving
conservatorship of a child or possession of or access to a child.  See id.
§ 107.0501(1) (West 2008).  A special type of social study, a preadoptive social
study, is required when termination of parental rights is sought and a person
other than the parent may be appointed managing conservator of the child.  See
id. § 107.0519(c)(1), (2) (West 2008).  By statute, a preadoptive social
study requires an interview only of “each party . . . who requests termination
of the parent-child relationship or an adoption.”  Id. § 107.0519(b)
(West 2008).

Here,
the trial court ordered a preadoptive social study in connection with D.L.S.’s
adoption by her stepfather.  The trial court’s order specifically states that a
“preadopotive social study” is ordered.  Thus, because Father was not a party
requesting termination or adoption, the statute did not require that he be
interviewed.  Id.  We overrule Father’s third point.

A preadoptive
social study is ordered because a party is seeking to adopt a child.  See
id. § 107.0519.  An adoption proceeding does not properly commence until
at least one of the biological parent’s rights are terminated.  See In re
McAda, 780 S.W.2d 307, 312 (Tex. App.––Amarillo 1989, writ denied).  Thus, the
adoption proceeding here did not commence until Father’s rights had been
terminated, and after Father’s parental rights were terminated he possessed no
further justiciable interest in D.L.S.  See id.  Because Father’s rights
had been terminated, he was not a party to the adoption proceeding and was
therefore not entitled to a copy of the preadoptive social study; the failure
to provide him with a copy cannot constitute a denial of due process or equal
protection.  See id.  We overrule Father’s fourth point.

D.      Attorney
Ad Litem’s[3] Failure to Interview
Father and Serve Documents on Him 

 

          In
his fifth point, Father argues that the attorney ad litem failed to interview him
and failed to serve documents on him.  Father argues that these failures violated
his due process and equal protection rights and resulted in an unfair trial.  Father
also argues that the trial court “oversaw this failure and allowed it to
happen.”  Father urges this court to discipline the attorney ad litem and Judge
Havercamp.

          The
record before us contains no written or oral objections or complaints concerning
the attorney ad litem or Judge Havercamp’s rulings with respect to the attorney
ad litem.  Because no objections were made, no error is preserved for review.  See
Tex. R. App. P. 33.1(a).[4]  We therefore decline
Father’s request to discipline the attorney ad litem and Judge Havercamp, and we
overrule Father’s fifth point.

          E.      Cumulative
Effect of Errors Shows Bias

          In
his ninth point, Father argues that the trial court judge and the 235th
District Court have violated Father’s due process and equal protection rights on
multiple occasions, “resulting in an extremely biased cause.”  Father
reiterates his above complaints and also argues that the trial court’s rulings
on his motions and the alleged disappearance from the record of four requests
constitutes “[e]gregious prejudices.”  We have analyzed each of Father’s due
process and equal protection arguments above and have found no violations.  

Moreover,
the record does not support Father’s claims for bias or prejudice.  The Texas
Supreme Court has stated,

>[J]udicial rulings
alone almost never constitute a valid basis for a bias or partiality motion,= and opinions the
judge forms during a trial do not necessitate recusal >unless they display a
deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus,
judicial remarks during the course of a trial that are critical or disapproving
of, or even hostile to, counsel, the parties, or their cases, ordinarily do not
support a bias or partiality challenge.=

Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 240 (Tex. 2001) (quoting Liteky
v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994)). 
Furthermore, expressions of impatience, dissatisfaction, annoyance, and even
anger do not establish bias or partiality.  Id. at 240.  AA
judge=s
ordinary efforts at courtroom administration—even a stern and short-tempered
judge=s
ordinary efforts at courtroom administration—remain immune.@  Id.
(quoting Liteky, 510 U.S. at 556, 114 S. Ct. at 1157).

Here,
the record does not show bias or support recusal.  The record establishes that
Judge Havercamp made every effort to accommodate Father, who is in prison, by
offering to let him participate in the trial by telephone if he made the
arrangements with the prison officials.  We hold that Judge Havercamp did not
demonstrate any bias that would support recusal.  See Estate of Connally,
No. 02-07-00412-CV, 2008 WL 4531664, at *4 (Tex. App.CFort
Worth Oct. 9, 2008, no pet.) (mem. op.) (holding that, after reviewing the
record, judge did not demonstrate a bias).  We overrule Father’s ninth point.

V.  Record Supports Termination

          In
his eighth point, Father argues that the trial court did not by clear and
convincing evidence “fulfill any of the two-pronged requirements to terminate
parental rights.”  Specifically, Father argues that the evidence presented in
the reporter’s record is insufficient to support the trial court’s findings
under family code section 161.001(1) and (2) because he did not “voluntarily”
leave his child or fail to support his child, because he did not “knowingly”
engage in criminal conduct, and because the best interest of D.L.S. “can only
be achieved through the preservation of their natural parent-child
relationship.”

In
evaluating the evidence for legal sufficiency in parental termination cases, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that the grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We review all the evidence in
the light most favorable to the finding and judgment.  Id.  We resolve
any disputed facts in favor of the finding if a reasonable factfinder could
have done so.  Id.  We disregard all evidence that a reasonable
factfinder could have disbelieved.  Id.  We consider undisputed evidence
even if it is contrary to the finding.  Id.  That is, we consider
evidence favorable to termination if a reasonable factfinder could, and we
disregard contrary evidence unless a reasonable factfinder could not.  Id.

          We
cannot weigh witness credibility issues that depend on the appearance and
demeanor of the witnesses, for that is the factfinder’s province.  Id. at
573, 574.  And even when credibility issues appear in the appellate record, we
defer to the factfinder’s determinations as long as they are not unreasonable. 
Id. at 573.

          In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the judgment with our own.  In
re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We determine whether, on the
entire record, a factfinder could reasonably form a firm conviction or belief
that Father violated subsections (C) and (Q) of section 161.001(1) and that the
termination of the parent-child relationship would be in the best interest of
the child.  See Tex. Fam. Code Ann. § 161.001; In re C.H.,
89 S.W.3d 17, 28 (Tex. 2002).  If, in light of the entire record, the disputed
evidence that a reasonable factfinder could not have credited in favor of the
finding is so significant that a factfinder could not reasonably have formed a
firm belief or conviction in the truth of its finding, then the evidence is
factually insufficient.  H.R.M., 209 S.W.3d at 108.

          Here,
the eighteen-page reporter’s record details that Father last saw
D.L.S.––who was almost ten years old at the time of trial––in 2002 or 2003,
when D.L.S. was two or three years old, and that Father had made only one child
support payment.  The 104-page clerk’s record contains evidence that in 2007, Father
was convicted of murder and sentenced to life in prison.[5]
 There was no evidence that D.L.S. had a relationship with Father; instead, the
record contained evidence that D.L.S.’s stepfather acted as D.L.S.’s father.

After
reviewing the record under the required standards of review,[6]
we hold that the evidence is legally and factually sufficient to support the
trial court’s findings that (1) Father had voluntarily left D.L.S. alone or in
possession of another without providing adequate support of the child and
remained away for a period of at least six months, (2) Father had knowingly
engaged in criminal conduct that resulted in his conviction of an offense and
confinement or imprisonment and inability to care for D.L.S. for not less than
two years from the date the petition was filed, and (3) termination of the parent-child
relationship between Father and D.L.S. was in D.L.S.’s best interest.  We
overrule Father’s eighth point.

VI.  Texas Family
Code Section 161.001(1)(Q) Is Not Unconstitutional

          In
his second point, Father argues that Texas Family Code section 161.001(1)(Q)––authorizing
termination of a parent’s rights when a parent knowingly engages in criminal
conduct that results in the parent’s conviction of an offense and confinement
or imprisonment and inability to care for the child for not less than two years
from the date of the filing of the termination petition––is unconstitutional as
violative of article I, section 21 of the Texas constitution.  But Father’s
argument appears to challenge the trial court’s ability to order D.L.S.’s last
name to be changed.

          Article
I, section 21 of the Texas constitution states, “No conviction shall work
corruption of blood, or forfeiture of estate, and the estates of those who
destroy their own lives shall descend or vest as in case of natural death.” 
Tex. Const. art. I, § 21.  The provision means that a person may not be denied
the right to inherit on the basis of a criminal conviction.  Tex. Att’y Gen.
Op. No. GA-0632 (2008).  Father does not challenge family code section 162.016,
which deals with adoption orders and allows the name of the child to be
changed, nor does he challenge any of the inheritance statutes found in the
Texas Probate Code.  Because section 161.001(1)(Q) is solely a ground for the
first prong of termination, because a best interest finding is also required
for a parent’s rights to be terminated, and because section 161.001(1)(Q) does
not by itself result in a name change or affect one’s inheritance rights, we
decline to hold section 161.001(1)(Q) unconstitutional as violating article I,
section 21 of the Texas constitution.[7]  We overrule Father’s
second point. 

VII.  Conclusion

          Having
overruled all of Father’s points, we affirm the trial court’s judgment
terminating his parental rights to D.L.S., granting Brian’s adoption of D.L.S.,
and granting the name change from D.L.S. to D.L.B.

 

 

SUE WALKER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and WALKER, JJ.

 

DELIVERED:  July 21, 2011









[1]See Tex. R. App. P. 47.4.





[2]Father also urges this
court to hold that Texas Rule of Civil Procedure 121 is unconstitutional as “a
loophole of due process” because a piece of paper, which conveys simple
thoughts, cannot replace a physical appearance.  We decline Father’s invitation
to hold that such rule is unconstitutional.





[3]The trial court appointed
an attorney ad litem to represent D.L.S.’s interests.





[4]Even if Father’s arguments
were preserved, the record does not support them.  No evidence exists that the
attorney ad litem failed to interview Father.  At the termination trial, the
trial court asked the attorney ad litem if he had ample opportunity to
investigate the matter, and he responded, “Yes, Your Honor.”  He also responded
that he had received “quite a bit” of correspondence from Father and that he
was ready to proceed.  Thus, the record indicates that the attorney ad litem
obtained information from Father via written correspondence.  Similarly, the
clerk’s record contains a copy of the attorney ad litem’s original answer; it contains
a certificate of service stating that the answer was served on “each attorney
of record or party in accordance with the Texas Rules of Civil Procedure on
August 3, 2010.”  No evidence exists that Father was not sent a copy of the
attorney ad litem’s answer.  To the extent that Father argues that the attorney
ad litem was biased against him, we hold that there is no evidence in the
record to support Father’s bias argument.





[5]We affirmed Father’s
criminal conviction for murder in a prior appeal to this court.  We omit the
citation and style of the case to comply with Texas Rule of Appellate Procedure
9.8(b)(2).  See Tex. R. App. P. 9.8(b)(2).





[6]Father attempts to offer
evidence attached to his brief that is not in the appellate record.  See generally
Tex. R. App. P. 34.1 (stating that appellate record consists of the clerk’s
record and, if necessary to the appeal, the reporter’s record).





[7]Moreover, to the extent
that Father argues that subsection Q violates double jeopardy, the Texas
Supreme Court has held that termination of parental rights under subsection Q
does not constitute an additional punishment for prior criminal conduct because
subsection Q focuses on the parent’s future imprisonment and inability to care
for the child, not the criminal conduct committed by the parent in the past.  See
In re A.V., 113 S.W.3d 355, 360 (Tex. 2003).