In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-514 CV


____________________



ROBERT L. MCDORMAN, ET AL., Appellants



V.



KENNETH D. ROGERS, ET AL., Appellees






On Appeal from the 88th District Court


Hardin County, Texas


Trial Cause No. 45345-A






 MEMORANDUM OPINION


 This appeal arises from a bank fraud case that involved a settlement of the plaintiff's
claims, which was followed by a trial on one group of defendants' cross-claims against
another group. At the trial's conclusion, the trial court directed a verdict against the cross-claimants. The cross-claimants appeal. For the reasons stated below, we modify the
judgment and affirm in part; we also reverse and render in part. 

I. Parties


 The cross-claimants named in the trial court's final judgment are Robert L.
McDorman and various McDorman-related business entities: (1) McDorman Motors, Ltd.;
(2) McDorman Motors GP, LLC; (3) Mac-Pro, Ltd.; (4) Mac-Pro GP, LLC; (5) RLM Motor
Co., Ltd.; (6) RLM Motor Co. GP, LLC; and (7) Texas Auto Loan, L.C. ("McDorman-related business entities"). The cross-claimants filed cross-actions against their co-defendants who were former directors of Mauriceville National Bank: Kenneth D. Rogers,
Andrew W. Dunn, Pat H. Coone, Betty S. Coone, Wayne D. Butchee, Clint L. Hines, and
Sybil K. Jenkins ("Directors"). Bringing this appeal are McDorman, proceeding pro se, and
the McDorman-related business entities, who are named above and are represented by
counsel. 

II. Background


 Joe Penland, a former business partner of McDorman's, filed the underlying case for
this appeal in Hardin County, Texas. Penland and most of the defendants in the Hardin
County case were previously involved in an earlier lawsuit tried before a jury in the United
States District Court for the Eastern District of Texas. See Rogers v. McDorman, No. 05-41347, 2008 WL 711872, at *1 (5th Cir. Mar. 18, 2008). 

 In the federal case, the Directors sued McDorman, the McDorman-related business
entities (except for Texas Auto Loan, L.C.), Penland, Deon Thornton (the president and CEO
of Mauriceville National Bank), and other defendants under the civil provisions of the
Racketeer Influenced and Corrupt Organizations Act ("RICO"). Id. at *2; see 18 U.S.C. §
1964(c)-(d). The Directors also alleged state-law claims. Rogers, 2008 WL 711872, at *1. 
As the Fifth Circuit's opinion explained, the jury's answers to certain issues resulted in the
following findings: (1) Penland was not liable for anything; (2) McDorman, the McDorman-related business entities, and other defendants were liable under RICO; (3) McDorman, the
McDorman-related business entities, and Deon Thornton were liable for constructive fraud;
and (4) the Directors were in pari delicto (1) with McDorman, the McDorman-related business
entities, and other defendants not involved in this appeal. Id. at *2. Thus, the federal district
court entered judgment that the Directors take nothing against the liable defendants. Id. The
Directors appealed to the Fifth Circuit, principally challenging the in pari delicto finding and
the jury's failure to find Penland liable. Id. at *1. While Penland filed a cross-appeal of the
federal case, he and the Directors settled prior to oral argument and dismissed their appeals
against each other. Id. The Fifth Circuit affirmed the district court's judgment and described
the extensive background involving Penland, McDorman, and the Directors that led to the
lawsuits. Id. at *1-*2. With respect to the circumstances that led the parties to seek a judicial
remedy, we rely on the background provided in the Fifth Circuit's opinion. 

 As the Fifth Circuit explained, McDorman and his businesses had a longstanding
relationship with Mauriceville National Bank (MNB). Id. at *1. In 1999, McDorman and
Penland became business partners, with Penland contributing capital and McDorman running
the businesses' day-to-day operations. Id. In October 2000, McDorman started a check-kiting scheme at MNB, which moved money through MNB, Community Bank, and
SouthTrust Bank. Id. McDorman's scheme, however, was not typical because it used
cashier's checks and further involved MNB's participation in the check kite. (2) Id.

 The Fifth Circuit described the regular pattern of McDorman's scheme:

 McDorman's wife, Meshell, would call MNB in the morning to check the
balances in the Mac-Pro and McDorman Motors accounts. She would then
have MNB prepare cashier's checks payable to Mac-Pro or McDorman
Motors. A cashier's check is [a] check drawn by a bank on itself"; it is an
obligation of the bank that the bank is committed to honor, making it similar
to cash. Thus, normally, a customer must pay for a cashier's check when it is
issued, such as by tendering cash or debiting an account at the bank.
McDorman, however, did not do so. Rather, a runner would be sent to pick up
the cashier's checks, which were then deposited in Mac-Pro and McDorman
Motors accounts at Community Bank or SouthTrust Bank. The runner would
pay for the cashier's checks with regular checks drawn on Mac-Pro and
McDorman Motors accounts at MNB. MNB, however, would not immediately
process the payment checks, but would hold the payment checks for processing
on the next business day. This created a gap between when McDorman took
possession of MNB funds and when he paid for the cashier's checks, allowing
McDorman to belatedly cover the payment checks. The next day, the runner
would deposit into Mac-Pro and McDorman Motors accounts at MNB regular
checks drawn on accounts at Community Bank or SouthTrust Bank to cover
the previous day's payment checks. At the end of the scheme, it evolved to
where McDorman was receiving the cashier's checks in the morning and the
payment checks were not dropped off until the afternoon. For the scheme to
work, McDorman needed MNB's help, and he received it. [Deon] Thornton, 
the then-president and CEO of MNB, directed MNB employees to assist
McDorman. A number of employees prepared the cashier's checks, although
Teresa Viator prepared most of them. The trial evidence indicates that other
employees played a role in facilitating the scheme, such as the tellers who
specially tracked and reported deposits into McDorman related accounts.

 . . . .


 Penland claimed that in early July he discovered suspiciously large checks
being written by McDorman to MNB; he met with McDorman and learned of
the scheme. McDorman, however, did not immediately stop the check-kiting. 
The scheme unraveled when Penland reported it to Community Bank on July
12, and Community Bank took steps to protect itself. Mac-Pro and 
McDorman Motors accounts at Community Bank were frozen, and Penland
instructed McDorman to issue stop payment orders on Community Bank and
SouthTrust Bank checks paid to MNB. A number of Mac-Pro and McDorman
Motors debts-but not the amounts owed for the cashier's checks-were paid off
after the scheme stopped. MNB, unable to collect payment on the final
cashier's checks, suffered some $3.3 million in losses and faced the prospect
of failing. Federal regulators required Directors to recapitalize MNB for $2
million, enter a consent decree, and make periodic reports. 

 . . . .

 MNB's claims against Defendants and Penland were assigned to Directors,
and in July 2003, Directors brought claims under the civil provisions of RICO
and Texas law.[ (3)] The case was tried over twelve days.


Id. at *1, *2 (citations and footnotes omitted). 


 The federal trial court entered its judgment on June 24, 2005, and the Directors
subsequently appealed to the Fifth Circuit.

Penland's Hardin County Lawsuit


 According to the trial court's docket sheet, Penland filed the underlying Hardin
County suit on March 11, 2005. However, the next activity did not occur until November
21, 2005, when Penland filed his first amended petition. In that pleading, Penland sued: (1)
Robert L. McDorman; (2) McDorman Motors, Ltd.; (3) Texas Auto Loan, L.C.; (4) the
Directors; and (5) other defendants, including Thornton, who are not involved in this appeal. 
Penland alleged various causes of action in his first amended petition, including fraud, breach
of contract, and tortious interference with contract. Penland also alleged that the defendants
violated the federal RICO statute through money laundering, bank fraud, mail fraud, and wire
fraud.

 The record contains answers and cross-claims filed by various defendants. On
December 6, 2005, McDorman filed two pleadings in his own capacity and purportedly on
behalf of McDorman Motors and Texas Auto Loan-a pro se general denial and a cross-claim
against other defendants, including the Directors, but excluding Penland. The cross-claims
of McDorman, McDorman Motors, and Texas Auto Loan contained numerous allegations. (4) On December 21, 2005, the Directors answered with a general denial and affirmative
defenses, which included res judicata and in pari delicto. (5)
 After the Directors filed their
answer, the record reflects no pertinent activity until July 2006, when the Directors first
sought a continuance of the October trial setting. (6) The following time line for July through
October 2006 traces the pretrial activity.


 July 11 - the Directors filed their motion seeking a stay and continuance. The
Directors filed a notice of hearing for July 18, 2006. There is no reporter's
record of a hearing on motions in July.

 July 24 - the trial court entered its order denying the Directors' motion for stay
and took their motion for continuance under advisement.

 August 15 - McDorman, acting individually and on behalf of McDorman
Motors and Texas Auto Loan, filed an unsworn motion for continuance. 
Nothing in the record shows that McDorman requested a hearing for the
motion. 

 August 23 - McDorman, McDorman Motors, and Texas Auto Loan filed an
unsworn amended motion for continuance. Nothing in the record shows that 
McDorman requested a hearing for the amended motion. 

 September 8 - the Directors filed a renewed motion for continuance in which
they note the October 10, 2006 trial setting. Attached to the motion was a
notice of hearing, that reflected a hearing date of September 14, 2006. There
is no reporter's record for a September 14 hearing. 

 September 20 - the Directors filed a brief regarding McDorman's right of
access to the courts. The brief states that it was prepared in response to the
trial court's request at the September 14 hearing. The brief noted the trial date
(October 10) and the date of McDorman's scheduled release (December 27). 
The Directors argued that McDorman had "a constitutional right of access to
the courts and may not be denied access merely because he is an inmate." The
brief acknowledged that the right of access is a qualified and not an absolute
right.

 September 25 - McDorman and the two McDorman businesses filed a
pleading that sought protection from the Directors' notice to take 
McDorman's depostion and from the subpoena duces tecum served with the
notice; the pleading also made an additional request for continuance of the
October 10 trial setting. The record does not show that McDorman or the
businesses requested a hearing on their requests.

 September 26 - the Directors filed a supplemental motion for continuance
claiming that they needed to take Thornton's deposition because her testimony
was critical to their case.

 September 27 - Penland filed a response to the Directors' supplemental motion
for continuance and claimed that Thornton had previously testified contrary to
the Directors' representations in their motion. Penland's response also argued
that Thornton's testimony would be cumulative. The trial court's docket sheet
contains a notation that states: "All motions for continuance denied." There
is no record of a hearing for September 27.

 October 5 - McDorman filed a pleading entitled "Absolute Right To Access
This Court." In this pleading, McDorman argued that he should be allowed to
attend trial, that he had "an absolute right to attend and participate" in the trial,
and that he did not waive his right to attend. Further, McDorman adopted the
Directors' brief regarding his right of access. The record does not show that
McDorman asked the trial court to conduct a hearing regarding this motion. 


 

 On October 5, the trial court began pretrial hearings in the case. The trial court denied
the Directors' special exceptions to Penland's petition, granted the Directors' motion to
extend time to make a settlement offer, and determined that the parties could use a jury
questionnaire. The record of the October 5 hearing does not reflect that any party requested
the trial court to consider any of their motions for continuance or motions that addressed
McDorman's request for access to the court.

 On October 10, the court called the case to trial and various defendants announced
their settlements with Penland. The parties read settlement terms into the record. The trial
court accepted the settlements and announced that the jury would return at 1:15 p.m. to
proceed with the remainder of the case.

 When the jury returned on the afternoon of October 10, the trial court announced that
the majority of the case had settled but also informed the jury that a portion of the case
remained to be tried. The remaining portion consisted of the cross-actions of McDorman and
the McDorman-related business entities against the Directors. The trial court called that
portion to trial (7) and asked if any of the parties wished to voir dire the jury panel. After the
Directors waived voir dire, the trial court asked whether the parties had strikes. The
Directors announced they had no strikes. The court seated the first twelve jurors and
administered the oath to them. Having received no announcement from McDorman and the
McDorman-related business entities, the court instructed its bailiff to call their names at the
courtroom door. The bailiff did so and then informed the court that he received no response. 
The Directors announced ready and waived opening statements. The court called upon
McDorman and the related business entities to present evidence and after receiving no
answer, the court asked the Directors if they wished to present evidence. The Directors
tendered four exhibits: (1) their amended complaint in the federal case, (2) the federal-case
verdict form, (3) the federal-case final judgment, and (4) the federal-case criminal judgment
entered against McDorman. The court admitted the exhibits and closed the evidence. The
Directors then moved for a directed verdict against McDorman and the entities. In support
of their motion for directed verdict, the Directors argued that no evidence supported the
cross-claims and that their evidence conclusively established their res judicata defense. 
Subsequently, the trial court granted the directed verdict and excused the jury.

 In its judgment, the trial court granted directed verdicts in the Directors' favor and
against McDorman, individually, and the seven McDorman-related business entities.
However, the record shows that Penland's complaint named only two McDorman-related
business entities - McDorman Motors, Ltd. and Texas Auto Loan. The judgment includes
five additional McDorman business entities, which along with McDorman Motors, Ltd. and
Texas Auto Loan constitute the McDorman-related business entities who bring this appeal. 
The five additional entities are: (1) McDorman Motors GP, LLC; (2) Mac-Pro, Ltd.; (3)
Mac-Pro GP, LLC; (4) RLM Motor Co., Ltd.; and (5) RLM Motor Co. GP, LLC. The record
before us in the current appeal is silent as to when these business entities became part of the
Hardin County suit, but no McDorman-related business entity asserts that it was improperly
added.

 On November 1, 2006, McDorman, on behalf of himself and "the entities" (the
movants), filed a pleading entitled: "Trial Without the Presence of Robert L. McDorman or
the McDorman Entities Motion Opposing Said Trial." "The entities" are not identified in
McDorman's motion. The movants contended that they first learned of the trial when they
received a copy of the proposed Final Judgment on October 26. The movants opposed the
holding of the trial without them and objected to the Directors' request for attorney's fees.
The movants argued that McDorman should have been allowed to attend the trial, as urged
in his "Right to Access" pleading. The motion further stated that McDorman neither had,
nor would, waive his right to attend and participate and that the movants opposed any
judgment resulting from the trial. The record contains no request for a hearing on this
motion.

 On November 14, 2006, the trial court entered a severance order and its final
judgment. The court severed into cause no. 45345-A all of the claims and causes asserted
against the Directors by McDorman and the McDorman entities, "including, without
limitation": McDorman Motors, Ltd.; McDorman Motors GP, LLC; Mac-Pro, Ltd.; Mac-Pro GP, LLC; RLM Motor Co., Ltd.; RLM Motor Co. GP, LLC; and Texas Auto Loan, L.C. 
The final judgment ordered that the claimants in the severed cause "shall take nothing" from
their claims and causes against the Directors, that attorney's fees be taxed against the
claimants, and that "all relief and all pending motions not specifically granted herein are
Denied." The judgment further recited it was a final judgment "disposing of all of the
McDorman Cross-Claimants' claims and causes of action against the MNB Director
Defendants and is appealable."

 Prior to the date the trial court entered its final judgment, McDorman and the 
McDorman-related business entities filed their notice of appeal on November 6, 2006. They
filed their appellate brief on March 13, 2007. Pursuant to this Court's order entered on July
12, 2007, the entities filed an amended notice of appeal, and their retained counsel filed a
brief on behalf of the entities on September 17, 2007.

III. Issues


 McDorman Business Entities


 The McDorman-related business entities (all seven that are named in the judgment
are identified as parties in the business entities' brief) present two issues. First, they contend
the trial court abused its discretion by refusing to grant a continuance of the first trial setting
in order to allow a trial to take place after McDorman was released from federal prison and
by refusing to act on McDorman's request to attend the trial. The entities contend that the
trial court's abuses of discretion caused McDorman and the entities to have no meaningful
access to the court. Second, they contend that the trial court abused its discretion and
violated Rule 41 of the Texas Rules of Civil Procedure by entering a post-trial severance. 

 McDorman 


 In his pro se appellate brief, McDorman presents five issues that contend: (1) the trial
court abused its discretion and violated his constitutional rights in conducting the trial in his
absence; (2) the trial court abused its discretion in not granting a continuance until some date
after December 27, 2006, his scheduled release date; (3) the trial court abused its discretion
by severing without notice to him and by severing after submitting the case to the fact finder;
(4) the judgment improperly awarded attorney's fees, costs, and litigation expense; and (5)
the judgment improperly purports to bind the "McDorman Entities" who are not identified
in the judgment.

IV. Continuance


 We first consider McDorman's and the McDorman-related business entities' claim
that the trial court abused its discretion by not granting a continuance of the trial setting. 
McDorman makes this argument in issue two and the business entities include the argument
in their issue one. 

 We review the grant or denial of a continuance motion for abuse of discretion. See
BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002). A trial court
"abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount
to a clear and prejudicial error of law." Johnson v. Fourth Court of Appeals, 700 S.W.2d
916, 917 (Tex. 1985). The trial court shall not grant a motion for continuance "except for
sufficient cause supported by affidavit, or by consent of the parties, or by operation of law."
Tex. R. Civ. P. 251. Generally, when the movant fails to provide an affidavit in support of
the motion, the appellate court presumes the trial court did not abuse its discretion in denying
the motion for continuance. Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986). Further,
to avoid waiver, the movant must present the motion to the court for its action prior to
rendition of judgment. Mathew v. McCoy, 847 S.W.2d 397, 400 (Tex. App.-Houston [14th 
Dist.] 1993, no writ). "A court is not required to consider a motion that is not called to its
attention." Risner v. McDonald's Corp., 18 S.W.3d 903, 909 (Tex. App.-Beaumont, 2000
pet. denied) (citing Greenstein, Logan & Co. v. Burgess Marketing, Inc., 744 S.W.2d 170,
179 (Tex. App.-Waco 1987, writ denied)).

 McDorman filed three motions for continuance - one on August 15, an amended one
on August 23, and the final one on September 25. He filed the motions individually and on
behalf of his related business entities. None of the motions for continuance contained either
an affidavit as required by Rule 251 or, alternatively, a declaration in compliance with
chapter 132 of the Texas Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem.
Code Ann. §§ 132.001-.003 (Vernon 2005) (entitled "Unsworn Declarations") (explaining
alternative procedure for inmates' verification of pleadings); Tex. R. Civ. P. 251. Further,
the record does not show that McDorman or the entities requested a hearing on any of the
motions for continuance. McDorman's statements in the August 15 motion clearly reflect
his understanding that the judge set the trial for October 10, 2006.

 In a letter brief filed after oral argument, the McDorman business entities argue that
procedural rules should not be "strictly (or even loosely) applied" to inmate litigants who are
proceeding pro se. In support of this argument, the entities cite Houser v. McElveen, 243
S.W.3d 646 (Tex. 2008) (per curiam). But, Houser is distinguishable; it involved a late-filed
notice of appeal, not an unsworn motion for continuance. See id. at 646-47. The Houser
Court noted that the appellant, who was an inmate proceeding pro se, had stated plausible
circumstances indicating that his failure to timely file his notice of appeal was not intentional
but rather was inadvertent. Id. The Texas Supreme Court determined that Houser's
explanation was sufficient to explain the delay attendant to the court's receipt of his notice
of appeal, and thus, held that the court of appeals should not have dismissed his appeal. Id.
at 647. 

 Further, the Houser opinion relies on Verburgt v. Dorner, 959 S.W.2d 615, 617 (Tex.
1997). See Houser, 243 S.W.3d at 647. The Verburgt Court held that a motion for extension
of time is necessarily implied when the perfecting instrument is filed (1) after the ninety-day
period allowed by Rule 26.1, but (2) within the fifteen-day grace period for which the
appellant would be entitled to move to extend the filing deadline. 959 S.W.2d at 617
(discussing the predecessor to Rule 26). The McDorman business entities do not cite any
cases extending the Verburgt reasoning regarding appellate filing deadlines to circumstances
involving defective motions for continuance (which by rule require affidavits), nor do we
find any. Thus, we decline to hold that Verburgt or Houser apply in this case. 

 Because the motions for continuance filed by McDorman and the business entities
were not sworn, and because the motions were never presented to the trial court, we find no
abuse of discretion in the trial court's failure to act on them. See Villegas, 711 S.W.2d at
626; Risner, 18 S.W.3d at 909; Mathew, 847 S.W.2d at 400. We overrule McDorman's
issue two. We also overrule the business entities' argument in issue one to the extent it is
based upon the contention the trial court abused its discretion in failing to grant the business
entities' motions for continuance. 

V. McDorman's Access to Courts


 The McDorman-related business entities present another argument in issue one: that
the trial court abused its discretion by refusing to act on McDorman's request to attend the
trial, and therefore the business entities received no meaningful access to the court. 
Similarly, McDorman's issue one contends that the trial court abused its discretion in
conducting the trial in his absence.

 On October 5, 2006, McDorman filed a pleading entitled "Absolute Right To Access
This Court." In its entirety, the pleading stated:

 The defendant McDorman Entities come forth on this said day to file
this Robert L. McDorman's Absolute Right to Access This Court Motion, and
respectfully show the following.


 On Thursday September 28th 2006, the McDorman Entities were
informed that this Court had denied all motions for continuance in the above
referenced cause number. I[,] Robert L. McDorman should be allowed to
attend this trial, and have an absolute right to attend, and participate in the
above referenced trial. I have not in anyway, nor will I [waive] my right to
attend, and participate in this trial. 


 Further more, I adopt Mr. Wright's motion entitled "The MNB Director
Defendants' Brief Regarding Pro Se Defendant Robert L. McDorman's Right
of Access to the Courts" in its entirety.


We interpret McDorman's pleading to be one requesting a bench warrant, or, in other words, 
an application for a writ of habeas corpus ad testificandum. See In re Z.L.T., 124 S.W.3d
163, 164 (Tex. 2003); Black's Law Dictionary 728 (8th ed. 2004) (defining the writ as
one "used in civil and criminal cases to bring a prisoner to court to testify.").

 We review a trial court's ruling on a bench warrant request for an abuse of discretion. 
See Z.L.T., 124 S.W.3d at 165. A litigant cannot be denied access to the courts simply
because he is an inmate. Id. However, our laws do not guarantee an inmate the absolute
right to personally appear in every court proceeding. Id. "Instead, the inmate's right of
access to the courts must be weighed against the protection of our correctional system's
integrity." Id. 

 Texas courts consider several factors when deciding whether to grant a prisoner's
request for a bench warrant, including: (1) the expense and inconvenience of transporting
the inmate to court; (2) whether the inmate presents a security risk to the court and public;
(3) whether the inmate has substantial claims; (4) whether the proceeding can reasonably be
delayed until the inmate's release; (5) whether the inmate "can and will offer admissible,
noncumulative testimony that cannot be effectively presented by deposition, telephone, or
some other means;" (6) whether the inmate's "presence is important in judging his demeanor
and credibility;" (7) whether the case will be tried before a jury or to the court; and (8) the
inmate's probability of success on the merits. Id. at 165-66 (explaining that in recognizing
these factors, Texas courts have followed Stone v. Morris, 546 F.2d 730, 735-36 (7th Cir.
1976)). 

 "In general, our rules place the burden on litigants to identify with sufficient
specificity the grounds for a ruling they seek. A litigant's status as an inmate does not alter
that burden." Id. at 166 (citations omitted). An inmate who claims a constitutional right to
access must explain "why his appearance in court [is] necessary to preserve his constitutional
right[.]" Id. The trial court does not have a duty to independently inquire into "relevant facts
not provided by the moving party." Id. Rather, the inmate who seeks a bench warrant "must
justify the need for his presence." Id.

 The Z.L.T. Court noted that the inmate's request for a bench warrant provided no
information that would allow the trial court to assess the necessity for his appearance. Id.
While the Z.L.T. inmate's request listed the Stone factors, the request "failed to provide any
factual information showing why his interest in appearing outweighed the impact on the
correctional system." Id. The Court also noted that the only pertinent information in the
inmate's request was that he was incarcerated in a facility more than 200 miles from the trial
court. Id. The Z.L.T. Court found that the inmate failed to meet his burden to establish his
right to relief and found that the trial court did not abuse its discretion by overruling the
bench-warrant request. Id. 

 In this case, McDorman's motion does not list the Stone factors and contains no facts
showing that his interest in appearing at trial outweighed the impact on the correctional
system. See Z.L.T., 124 S.W.3d at 166. Further, McDorman's adoption of the Directors'
brief added only the following facts: (1) the case was set for trial on October 10, 2006; (2)
McDorman was incarcerated in a federal correctional institution in Big Spring, Texas; (3)
McDorman was scheduled for release on December 27, 2006, according to his motion for
continuance; and (4) McDorman's cross-claims against the Directors were pending. (8)
 While
these facts are pertinent to one of the Stone factors (whether the proceeding can reasonably
be delayed until the inmate's release), the facts provide only the date of trial and
McDorman's alleged release date. Neither McDorman's nor the Directors' pleadings
presented facts that would have allowed the trial court to evaluate the remaining Stone
factors. In addition, there is no showing that McDorman requested and was denied
permission to attend by the federal authorities who held him nor is there an explanation why
his appearance by alternative measures, such as by telephone or deposition, would not be
sufficient under the circumstances of this case. See id. at 165-66 (noting that one of the
Stone factors is whether the testimony cannot effectively be presented by deposition,
telephone, or other means). (9) 

 Moreover, the record fails to show that the trial court considered either the Directors'
brief or McDorman's motion and also fails to show that these pleadings were ever brought
to the trial court's attention. See Risner, 18 S.W.3d at 909 (finding that a trial court is not
required to consider a motion not called to its attention). Had McDorman filed a motion
containing proper grounds and obtained a hearing, the parties could have presented evidence
relevant to the Stone factors, including McDorman's and the entities' probability of success
on the merits. For example, at a hearing, the Directors would likely have developed their
argument that the federal-suit judgment, which was adverse to McDorman and the
McDorman entities, precluded their recovery in the Hardin County litigation.

 Here, the motion on its face does not contain sufficient information to demonstrate
an abuse of discretion, and there is nothing that shows the trial court heard McDorman's
motion requesting access to the trial court. There is nothing that shows the trial court refused
to allow an attorney to appear on McDorman's or the business entities' behalf. Under these
circumstances, we find no abuse of discretion on the part of the trial court in failing to act on
McDorman's request for a bench warrant. Accordingly, we overrule the "right to access"
arguments presented in each of the respective appellants' briefs. 




VI. Severance


 In issue two, the McDorman-related business entities contend that the trial court erred
when it severed McDorman's claims against the Directors after the case was submitted to the
trier of fact. McDorman raises this same complaint in his issue three. 

 The record contains no timely request, objection, or motion in which either 
McDorman or the McDorman-related business entities complained to the trial court about
the severance order, which the trial court signed on November 14, 2006. By failing to object
in the trial court, appellants have failed to perfect this issue for appeal. See Tex. R. App. P.
33.1(a); Shank, Irwin, Conant & Williamson v. Durant, Mankoff, Davis, Wolens & Francis,
748 S.W.2d 494, 501 (Tex. App.-Dallas 1988, no writ); see also Ender v. First Nat'l Bank
of Marshall, Tex., 494 S.W.2d 606, 608 (Tex. Civ. App.-Texarkana 1973, no writ). We
overrule issue two presented by the McDorman business entities and issue three presented
by McDorman.

VII. Attorney's Fees, Costs, and Expenses


 In issue four, McDorman complains that there is no basis for the trial court's award
of attorney's fees, costs, and litigation expenses to the Directors. The court's final judgment
provided that "attorneys' fees, costs and litigation expenses so taxable be taxed against the
McDorman Cross-Claimants [.]" The Directors did not brief this issue. We find that the trial
court properly taxed costs against McDorman and the McDorman-related business entities
but that the court improperly awarded attorney's fees and litigation expenses to the Directors. 
Costs


 The Texas Rules of Civil Procedure provide that a successful party in a lawsuit shall
recover from "his adversary all costs incurred therein, except where otherwise provided."
Tex. R. Civ. P. 131; see Roberts v. Williamson, 111 S.W.3d 113, 124 (Tex. 2003). "A
'successful party' is one who obtains a judgment of a competent court of jurisdiction
vindicating a civil claim of right. A party is 'successful' based upon its success on the merits
and not on whether damages are awarded." Moore v. Trevino, 94 S.W.3d 723, 729 (Tex.
App.-San Antonio 2002, pet. denied) (citations omitted). We review the trial court's
allocation of costs under an abuse of discretion standard. See Rogers v. Walmart Stores, Inc.,
686 S.W.2d 599, 601 (Tex. 1985).

 Because the trial court's judgment was in favor of the Directors on the cross-claims
brought by McDorman and the McDorman-related business entities, the Directors were
entitled to recover their costs under Rule 131. See Tex. R. Civ. P. 131; Moore, 94 S.W.3d
at 729. We find the trial court did not abuse its discretion in taxing costs against McDorman
and the McDorman-related business entities. See Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985) (finding that a trial court abuses its discretion when it
acts without regard for any guiding rules or principles). 



Attorney's Fees and Litigation Expenses


 Generally, a prevailing party cannot recover attorney's fees or litigation expenses 
unless permitted by statute or by contract between the parties. Tony Gullo Motors I, L.P. v.
Chapa, 212 S.W.3d 299, 310 (Tex. 2006) (attorney's fees); see also Caesar v. Bohacek, 176
S.W.3d 282, 285-86 (Tex. App.-Houston [1st Dist.] 2004, no pet.) (finding trial court erred
in awarding attorney's fees and litigation expenses absent statutory authorization).

 Various statutes allow awards of attorney's fees or expenses. For example, the Texas
Civil Practice and Remedies Code allows the recovery of reasonable attorney's fees for
causes of action brought on a sworn account or for breach of contract. Tex. Civ. Prac. &
Rem. Code Ann. § 38.001(7), (8) (Vernon 1997). The Texas Probate Code allows an
administrator or executor of a will to recover "necessary expenses and disbursements,
including reasonable attorney's fees" incurred when defending or prosecuting a will contest
suit. Tex. Prob. Code Ann. § 243 (Vernon 2003). Also, the Texas Free Enterprise and
Antitrust Act allows defendants to recover "reasonable attorney's fee, court costs, and other
reasonable expenses of litigation" if the trial court finds that the suit "was groundless and
brought in bad faith or for the purpose of harassment[.]" Tex. Bus. & Com. Code Ann. §§
15.01, .21 (a) (3) (Vernon 2002). 

 The Directors point to no statute that authorizes their recovery of attorney's fees and
litigation expenses, and we have found none. Further, the appellate record contains no
evidence presented at trial to support the awards, nor do the Directors contend on appeal that
they presented such evidence to the trial court. In the absence of statutory authorization for
the Directors' recovery of attorney's fees and litigation expenses, we find the trial court erred
in awarding them. Thus, we sustain issue four, in part, and overrule it in part.

XI. Unidentified McDorman Entities


 In issue five, McDorman contends that the judgment improperly attempts to bind 
McDorman-related business entities that are not identified in the judgment. The trial court's
judgment entered a directed verdict against the "McDorman Cross-Claimants," who were
identified in the judgment as "Robert L. McDorman and the McDorman Entities including,
without limitation, McDorman Motors, Ltd., McDorman Motors GP, LLC, Mac-Pro, Ltd.,
Mac-Pro GP, LLC, RLM Motor Co. Ltd., RLM Motor Co., GP, LLC and Texas Auto Loan,
L.C." (Emphasis added). The Directors reply that McDorman should not complain about the
identification in the trial court's final judgment because his own petition defined the term
"McDorman" to include the McDorman Entities, "which include, but [are] not limited to,
McDorman Motors, Ltd. and Texas Auto Loan, L.C." (Emphasis added).

 In general, our rules of procedure require that judgments be entered only against a
party who has been named as a defendant and served with process. See Tex. R. Civ. P. 124; 
Werner v. Colwell, 909 S.W.2d 866, 869 (Tex. 1995). Language in the judgment that
conflicts with our laws and rules is surplusage. See Alegria v. Tex. Alcoholic Beverage
Com'n, 731 S.W.2d 723, 726 (Tex. App.-Houston [14th Dist.] 1987, no writ); State v.
Starley, 413 S.W.2d 451, 466 (Tex. Civ. App.-Corpus Christi 1967, no writ). The contested
judgment language appears to apply to unnamed and unserved parties. Thus, we consider
it surplusage. We sustain issue five and modify the judgment to delete the following phrase: 
"including, without limitation." See Tex. R. App. P. 43.2(b).

X. Conclusion


 We overrule issues one and two presented by the McDorman-related business entities:
(1) McDorman Motors, Ltd.; (2) McDorman Motors GP, LLC; (3) Mac-Pro, Ltd.; (4) Mac-Pro GP, LLC; (5) RLM Motor Co., Ltd.; (6) RLM Motor Co. GP, LLC, and (7) Texas Auto
Loan, L.C. We overrule issues one, two, and three presented by Robert L. McDorman. We
overrule Robert L. McDorman's issue four as it relates to the taxing of costs against Robert
L. McDorman and the McDorman-related business entities. We sustain Robert L. 
McDorman's issue four as it relates to the award of attorney's fees and expenses to the
Directors, and we sustain Robert L. McDorman's issue five. 

 Accordingly, we reverse the trial court's award of attorney's fees and litigation
expenses, and we render judgment that the Directors take nothing for attorney's fees and
litigation expenses. We modify the judgment to delete the phrase: "including, without
limitation." In all other respects, we affirm the trial court's judgment. 

 AFFIRMED IN PART AS MODIFIED; REVERSED AND RENDERED IN PART.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on February 14, 2008

Opinion Delivered May 8, 2008

Before Gaultney, Kreger, and Horton, JJ.

CONCURRING OPINION



 I concur. After the federal case, there is nothing left to try. See Rivet v. Regions Bank
of La., 522 U.S. 470, 476-77, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (federal judgment on
merits precludes relitigation of issues that were or could have been raised).


 ______________________________

 DAVID GAULTNEY

 Justice


Concurrence Delivered

May 8, 2008


Before Gaultney, Kreger, and Horton, J.J.
1. The in pari delicto defense is derived "from the Latin, in pari delicto potior est
conditio defendentis: 'In a case of equal or mutual fault ... the position of the [defending]
party ... is the better one.'" Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299,
306-307, 105 S.Ct. 2622, 2626-2627, 86 L.Ed.2d 215 (1985) (quoting Black's Law
Dictionary 711 (5th ed. 1979)).
 
2. The usual check kite is defined as "[t]he illegal practice of writing a check against
a bank account with insufficient funds to cover the check, in the hope that the funds from a
previously deposited check will reach the account before the bank debits the amount of the
outstanding check." Black's Law Dictionary 253 (8th ed. 2004). 
3. On August 20, 2004, the United States District Court for the Eastern District of Texas
accepted the guilty plea of Robert L. McDorman to one count of bank fraud. Subsequently,
McDorman was incarcerated in the federal prison system. 
4. The allegations were: (1) misprison of felony; (2) libel; (3) mental distress; (4)
personal injury as a result of economic loss, personal distrust, contempt, and ridicule; (5) loss
of family relationship; (6) defense of others; (7) battery by infectious disease; (8) fraud on
the community; (9) loss of business relationships, by intentional interference with
performance of contracts with third parties and by business losses; (10) negligence and gross
negligence; (11) unjust enrichment; (12) civil conspiracy; (13) conversion; (14) trespass to
chattels; (15) breach of fiduciary duty and duty of fair dealing; (16) violations of 18 U.S.C.
§ 1962(a), (b), (c); and (17) conspiracy to launder money. 
5. The remaining defenses alleged by the Directors included: (1) failure to state a claim
upon which relief could be granted, (2) limitations, (3) lack of standing, (4) McDorman's
fraud and racketeering, (6) no duty, (7) no reasonable reliance on directors' conduct, (8) lack
of proximate cause, (9) failure to mitigate, and (10) waiver. 

6. After December 21, 2006 and before July 11, 2006, the appellate record shows that
only two documents were filed; both were answers filed by parties not involved in this
appeal.
7. The trial court called to trial: Robert L. McDorman and the McDorman entities,
"including without limitation," the following: McDorman Motors, Ltd.; McDorman Motors
GP, LLC; Mac-Pro, Ltd.; Mac-Pro GP, LLC; RLM Motor Co., Ltd.; RLM Motor Co., GP,
LLC; and Texas Auto Loan, L.C.
8. The Directors' brief also alleged that McDorman was a defendant. While he was a
defendant in the suit by Penland, the unsettled portion of the suit that went to trial consisted
of McDorman's and the entities' claims against the Directors. Some courts recognize "that 
a prisoner's status as a defendant weighs in his favor on the issue of his right to personally
appear at trial." Taylor v. Taylor, 63 S.W.3d 93, 97 (Tex. App.-Waco 2001, no pet.); see
Armstrong v. Randle, 881 S.W.2d 53, 57 (Tex. App.-Texarkana 1994, writ denied).

9. In their post-submission brief, the entities argue that we should follow In re R.C.R.,
230 S.W.3d 423 (Tex. App.-Fort Worth 2007, no pet.), a case finding that the trial court's
refusal to allow an inmate to appear by alternate means constituted a denial of the
opportunity to be heard. See 230 S.W.3d at 427. The R.C.R. inmate, however, actually filed
a motion to appear by alternate means. Id. at 426-27. In contrast, McDorman's motion
contained no such request.